OPINION
{¶ 1} Plaintiff-appellant Brenda Crofut appeals from the January 3, 2003, and March 13, 2003, Judgment Entries of the Stark County Court of Common Pleas, Family Court Division.
 STATEMENT OF THE FACTS AND CASE {¶ 2} Appellant Brenda Crofut and appellee Tabb Crofut were married on June 9, 1989. One child was born as issue of the parties, namely, Trent Crofut, born August 13, 1991. Appellee has a son from a prior marriage.
 {¶ 3} On May 3, 2002, appellant filed a complaint for divorce against appellee. A trial was held on December 18, 2003. The following testimony was adduced at trial.
 {¶ 4} Appellant Brenda Crofut, who has a high school education, had, as of the time of trial, been employed part time for three years as a sales representative at Nestle's working twenty hours a week. Appellant, who earns approximately $13,563.00 a year, has no retirement benefits through her employment at Nestle's or from any other prior employment. However, appellant has an IRA account through Prudential Financial that was acquired during the parties' marriage. As of the date of trial, the IRA balance was approximately $379.00. In addition, appellant has a 401(K) plan with Nestle worth $867.00.
 {¶ 5} In turn, appellee Tabb Crofut is employed as a body man at Waikem Ford, where he has been employed for approximately six years. Appellee has earnings of approximately $67,983.00 per year. Through his employment with Waikem, appellee has a 401(K) plan that, as of December of 2002, had a balance of $20,604.00. In addition, appellee has rental income of approximately $6,375.00 per year.
 {¶ 6} At trial, appellant testified that the parties had nine insurance policies that were acquired during the marriage with a combined cash value of over $51,000.00. While some of the policies were in appellant's name, others were in appellee's name.
 {¶ 7} During their marriage, the parties lived in a home that appellee purchased for $92,500.00 prior to their marriage. Appellee made a $32,500.00 down payment on the house using an inheritance and borrowed the remainder from the bank. After their marriage, the parties refinanced the mortgage on the house and appellant signed on the mortgage. At trial, appellant introduced an exhibit showing that the payoff balance on the mortgage as of December of 2002 was $45,086.00. The parties agreed that the house had an appraised value of $135,000.00.
 {¶ 8} At trial, appellant testified that appellee, prior to the date of the parties' marriage, owned a rental property, which was the house that appellee had lived in with his first wife, who is deceased. According to appellant, during the parties' marriage, $8,000.00 in improvements were made to the property using marital funds. At the time of the parties' marriage in 1989, the property had an appraised value of $29,600.00 and, as of the date of trial, had an appraised value of $56,000.00. The following testimony was adduced when appellant was asked whether she had ever worked on the property:
 {¶ 9} "Q. Maam, did you work — well, what work did you do on the property during the marriage?
 {¶ 10} "A. In between renters, I cleaned, I painted, we cleaned up the yard, different maintenance.
 {¶ 11} "Q. Did you also deal with the renters?
 {¶ 12} "A. Yes, I did. There was times that, yes, I showed the house when it was [sic] calls. Transcript at 23.
 {¶ 13} At the trial, appellant also testified regarding three motor vehicles owned by the parties, all of which were titled in appellee's name. One of the vehicles was a 1994 GMC Sonoma valued at $1,760.00 with no loan against it, which appellant testified appellee transferred to his son from another marriage on the day that appellee was served with divorce papers. According to appellant, marital funds were used to purchase the same. In turn, appellee testified that he had purchased the Sonoma for $500.00 as a second vehicle, fixed it up and then sold it to his son. According to appellee, "he [appellee's son] made payment to me and the money was either put in a checking or savings, whichever the case may have been at that time, not documented, I did not make him sign anything, and then it was his vehicle." Transcript at 93.
 {¶ 14} Another of the vehicles, a 1997 Dodge pick up truck, was valued at $9,500.00 and also was debt free. The final vehicle was a 2000 Nissan Maxima valued at $11,010.00, which had a lien against it in the amount of $9,329.00 as of November 29, 2002.
 {¶ 15} According to appellant, 19 firearms were in the marital residence, of which at least four were appellee's premarital property. The guns have an appraised value of $5,430.00. Appellant testified that appellee bought a number of guns during the marriage, and that appellee spent $3,000.00 on guns the three years prior to the trial. In turn, appellee testified that between five and six of the guns were not his, but were guns that appellee stored for a friend.
 {¶ 16} Following the trial, as memorialized in a Judgment Entry filed on January 3, 2003, the trial court granted the parties a divorce on the ground of incompatibility. The trial court, in its entry, held that the rental property was appellee's separate property, finding that appellant "did little to increase value of this property and proceeds from rental income were used for both parties benefit during the marriage." The trial court, in its entry, further held, in part, as follows:
 {¶ 17} "The marital residence is ordered sold as well as personal property. Husband has exclusive right to home pending sale and making mortgage payments. If house is not sold within one hundred eighty (180) days from date of entry it is to be auctioned. Husband may buy Wife out of her interest in home within ninety (90) days and personal property for five thousand dollars ($5,000.00). If Husband does not purchase residence all proceeds after normal expenses of sales are to be divided equally but Husband is to get credit for thirty-two thousand five hundred dollars ($32,500.00) down payment credit."
 {¶ 18} Finally, the trial court awarded appellee the Dodge truck, the GMC Sonoma and all of the guns and awarded appellant the Nissan and her small pension. The trial court also ordered that all insurance policies be divided equally and that appellant was entitled to ½ of appellee's 401(K).
 {¶ 19} Thereafter, on January 10, 2003, appellant filed a "Motion for Clarification or in the Alternative for Relief under Civil Rule 60(A)". Appellant, in her motion, argued as follows:
 {¶ 20} "In Findings of Fact #4, the court found that the marital residence had a value of $135,000.00 that the mortgage balance was $44,600.00; and that there was a $32,500.00 separate property interest of the Husband in said residence. At the bottom of Page 3 of the Judgment Entry, the last sentence reads "Husband may buy Wife out of her interest in home within ninety (90) days and . . ." The first line at the top of Page 4 of the Judgment Entry reads "personal property for five thousand dollars ($5,000.00)."
 {¶ 21} "It appears from the Judgment Entry that there was a language omitted at the end of Page 3. Nowhere in the Judgment Entry does the court award the personal property to either party.
 {¶ 22} "It is the Plaintiff's position that it was the court's intention to give the Defendant an option to purchase the interest of the Plaintiff in the marital residence by paying to the Plaintiff one-half of the difference between the value of the residence and the mortgage, plus separate property interest, and then also give the Defendant an option to purchase the personal property for $5,000.00.
 {¶ 23} "Otherwise, the court has not disposed of the personal property and had granted the Defendant an option for $5,000.00 to purchase the interest of the Plaintiff in the marital residence, which according to the fact findings, has a value of $32,000.00
 {¶ 24} "Based upon the foregoing, Plaintiff moves the court to clarify the final Judgment Entry or, in the alternative, for relief under Civil Rule 60(A) to correct a clerical error in the Judgment Entry."
 {¶ 25} In turn, appellee, on January 15, 2003, filed a "60(A) and 60(B) Motion", arguing that the trial court had improperly awarded "pre-martial Insurance and Annuity Policies to the Plaintiff, when in fact it is the Defendant's separate property, . . ." Appellee also filed a second such motion on the same date, alleging, in part, that the trial court erred in failing to order appellant to pay the installment loan and insurance for the Nissan awarded to her.[1]
 {¶ 26} Thereafter, on January 31, 2003, appellant filed a Notice of Appeal. On the same date, appellant filed a motion with this Court, moving this Court "to remand to the trial court for determination Plaintiff's Motion for Clarification or in the Alternative for Relief under Civil Rule 60(A)." Pursuant to a Judgment Entry filed on February 10, 2003, this Court granted appellant's motion and remanded the matter to the trial court "for further proceedings to rule upon the Plaintiff/Appellant's Motion for Clarification or in the Alternative for Relief Under Civil Rule 60(A) within twenty days of the date of this Judgment Entry."
 {¶ 27} As memorialized in a Judgment Entry filed on March 13, 2003, the trial court granted "both request of Plaintiff and Defendant for Relief under Civil Rule 60A." The trial court, in its March 13, 2003, entry, stated, in part, as follows:
 {¶ 28} "The marital residence is ordered sold as well as personal property. Husband has exclusive right to home pending sale and making all tax and mortgage payments. If house is not sold within one hundred eighty days (180) from date of this entry, it is to be auctioned. If house is sold proceeds are to be divided equally after payment of normal expenses of sale and credit to Husband for first thirty-two thousand five hundred dollars ($32,500.00) for his separate property credit. In addition, Husband may buy Wife out of marital home by paying the difference between the value of residence less the mortgage and credit for his thirty-two thousand five hundred dollars ($32,500.00) separate property interest. Further, Husband may buy all marital personal property for five thousand dollars ($5,000.00). This is to be done within ninety (90) days.
 {¶ 29} "Item 4 of the Orders of Court is to read:
 {¶ 30} "Husband gets the Dodge Truck and the GMC Truck. Wife gets the Nissan. Each is responsible for all costs associated with respective vehicle. All marital insurance policies are to be divided equally. Each party is entitled to their pre-marital insurance policies. Wife is to get one-half (1/2) of Husbands 401K based on duration of marriage. Wife is to retain her small pension and Husband is to receive all guns."
 {¶ 31} It is from the trial court's January 3, 2003, and March 13, 2003, Judgment Entries that appellant now appeals, raising the following assignments of error:
 {¶ 32} "I. The trial court erred as a matter of law in finding that the increase in the value of the rental property was husband's separate property. The evidence presented demonstrated that the appreciation was not passive but was primarily the result of the improvements paid for with marital funds.
 {¶ 33} "II. The trial court erred in failing to specifically award the Prudential Ira, the nestle 401(k) or the Insurance Policies to either party.
 {¶ 34} "III. The trial court abused its discretion in dividing the parties' property.
 {¶ 35} "a. The trial court failed to follow the statutory presumption of equal division of marital assets, to equitably divide the parties' assets, or to make written findings to demonstrate that the property division is equitable as required by statute.
 {¶ 36} "b. The trial court erred in permitting husband to buy-out wife's share of the parties' personal property for $5,000 because there is absolutely no support for that value in the record.
 {¶ 37} "IV. The trial court erred in revising its property division to state that all `marital' insurance policies are to be divided equally and that each party is entitled to their `pre-martial' insurance policies.
 {¶ 38} "a. The trial court was without jurisdiction to hear husband's Civ. R. 60(b) motion.
 {¶ 39} "b. Even if the trial court had jurisdiction to hear husband's motion, he could not meet the standards set forth in GTE Automatic Elec. v. Arc Industries, Inc. (1976), 47 Ohio St.2d 146."
 I {¶ 40} Appellant, in her first assignment of error, argues that the trial court erred in finding that the $26,400.00 increase in value of the rental property, from $29,600.00 to $56,000.00 was appellee's separate property. As is stated above, the trial court, in its January 3, 2003, entry, held that the rental property was appellee's separate property, since appellant "did little to increase value of this property and proceeds from rental income were used for both parties benefit during the marriage."
 {¶ 41} Revised Code 3105.171(B) authorizes the trial court to determine "what constitutes marital property and what constitutes separate property." Subsection (A)(3)(a) states, in relevant part as follows:
 {¶ 42} "(3)(a) "Marital property" means, subject to division(A)(3)(b) of this section, all of the following:
 {¶ 43} "(i) All real and personal property that currently is owned by either or both of the spouses, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;
 {¶ 44} "(ii) All interest that either or both of the spouses currently has in any real or personal property, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;
 {¶ 45} "(iii) Except as otherwise provided in this section, all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage; . . ." (Emphasis added).
 {¶ 46} In turn, R.C 3105.171(A)(3)(b) states that "Marital property" does not include any separate property."
 {¶ 47} There is no dispute in the case sub judice that the rental property was appellee's separate property since he received the same from his first wife's estate. As is stated above, R.C. 3105.171(A)(3)(b) clearly provides that marital property does not include separate property.
 {¶ 48} In the case sub judice, appellant testified at the December 18, 2002, trial that over $8,000.00 in marital funds were used to improve the rental property and that, during the parties' marriage, she cleaned and painted the property and also showed the same to prospective tenants. However, there is no evidence in the record as to the hours expended by appellant or the value of the same. Since, as noted by the trial court, appellant "did little to increase [the] value of the property," the appreciation in the same never became marital property but remained separate property. In other words, pursuant to Revised Code Section 3105.171(A)(3)(a), marital property includes appreciation on separate property which is due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage, and, the trial court did not find that the increase in value to this property was due to the labor, monetary, or in-kind contribution of either or both spouses during the marriage. In short, there is nothing in the record establishing that the increase in value of the rental property was anything but passive appreciation.
 {¶ 49} Appellant's first assignment of error is, therefore, overruled.
 II {¶ 50} Appellant, in her second assignment of error, argues that the trial court erred in failing to specifically award the Prudential IRA, the Nestle 401K, or the insurance policies to either party. We agree.
 {¶ 51} Pursuant to R.C. 3105.171(C), a trial court is required to distribute all of the property owned by the parties. The trial court, in the case sub judice, did not specifically designate which party would receive which pension assets. Rather, the trial court, in its March 13, 2003, entry, ordered that "wife is to retain her small pension."
 {¶ 52} While the trial court apparently intended to award appellee her Prudential IRA worth $379.00 and her Nestle 401(K) valued at $867.00, it did not, as noted by appellant, "include specific language awarding these assets to her or disposing of them in any manner."
 {¶ 53} Appellant's second assignment or error is, therefore, sustained.
 III {¶ 54} Appellant, in her third assignment of error, contends that the trial court failed to follow the statutory presumption of equal division of marital assets, to equitably divide the parties' assets, or to make written findings demonstrating that the property division was equitable, as is required by statute. Appellant further contends that the trial court erred in permitting appellee to buy-out appellant's share of the parties' personal property for $5,000.00 "because there is absolutely no support for that value in the record."
 {¶ 55} A review of a trial court's division of marital property is governed by the abuse of discretion standard. Martin v. Martin (1985),18 Ohio St.3d 292, 480 N.E.2d 1112. We cannot substitute our judgment for that of the trial court unless, when considering the totality of the circumstances, the trial court abused its discretion. See Middendorf v.Middendorf, 82 Ohio St.3d 397, 1998-Ohio-403, 696 N.E.2d 575. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 450 N.E.2d 1140.
 {¶ 56} Revised Code 3105.171(C) mandates an equal division of marital property, unless such would be inequitable under the circumstances. In dividing marital assets, and in deciding whether to order an unequal award, a trial court must consider all relevant factors, including those listed in R.C. 3105.171(F). The trial court must address these statutory factors in making a decision. Neel v. Neel
(1996), 113 Ohio App.3d 24, 32, 680 N.E.2d 207. The trial court also must make written findings of fact to support its decision. See R.C.3105.171(G).
 {¶ 57} In the case sub judice, the trial court did not divide the marital property equally. The trial court made the following distribution of the parties' assets:

{¶ 58} "Property FMV Debt Husband Wife
{¶ 59} Marital home $135,000 ($44,600)[2] $28,950[3] $28,950
 Insurance Policies $ 57,105 Unclear as to the
 Disposition
 Prudential IRA $ 379 $ 379[4]
 Nestle 401(K) $ 867 $ 867[5]
 Waikem 401(K) $ 20,604 $10,302 $10,302
 1997 Dodge Pickup $ 9,500 None $ 9,500
 1994 GMC Sonoma $ 1,760 None $ 1,760
 2000 Nisan Maxima $ 11,010 ($9,329) $ 1,681
 19 Guns $ 5,430 $ 5,430
 Personal Property $ 14,459[6] $ 9,459 $ 5,000
 _______ _______
 Total $65,401 $47,179"
 {¶ 60} This distribution resulted in an inequitable distribution of marital property. However, although it clearly did not divide the marital property equally, the trial court failed to make written findings of fact supporting its decision that the marital property has been equitably divided, as is required by R.C. 3107.171(G).
 {¶ 61} In addition, the trial court, in the case sub judice, ordered that appellee may buy-out appellant's share of the parties' personal property for $5,000.00. The appraised value of the personal property was $23,959.00. Once the value of the 1997 Dodge truck ($9,500.00) awarded to appellee is deducted from such figure, the final appraised value of the personal property is $14,459.00. Half of such figure is approximately $7,230.00. Upon our review of the record, we concur with appellant that, in light of such value, "there is absolutely no basis for the court's order granting Husband the right to buy Wife's share of the personal property for $5,000.00."
 {¶ 62} Appellant's third assignment of error is, therefore, sustained.
 IV {¶ 63} Appellant, in her fourth assignment of error, asserts that the trial court erred, in its March 13, 2003, Judgment Entry, by revising its property division to state that all "marital" insurance policies are to be divided equally and to state that each party is entitled to their "pre-marital" insurance policies. We agree.
 {¶ 64} The trial court, in its January 3, 2003, Judgment Entry, ordered that all insurance policies be divided equally. Appellee, in the case sub judice, filed a "60(A) and 60(B) Motion" on January 15, 2003, alleging that the trial court, in its January 3, 2003, Judgment Entry, had improperly treated the insurance policies as marital property when the same were appellee's separate property. After this Court remanded this matter to the trial court "for further proceedings to rule upon the Plaintiff/Appellant's Motion for Clarification or in the Alternative for Relief Under Civil Rule 60(A).", the trial court, in a Judgment Entry filed on March 13, 2003, ordered that "[a]ll marital insurance policies are to be divided equally. Each party is entitled to their pre-marital insurance policies."
 {¶ 65} However, as noted by appellant in her brief, appellee never obtained an order from this Court remanding the matter to the trial court for a hearing on his "60(A) and 60(B) Motion." The February 10, 2003, Judgment Entry issued by this Court only referenced appellant's pending motion — not that filed by appellee.[7] The trial court, therefore, had no jurisdiction to hear and rule on appellee's "60(A) and 60(B) Motion" and to revise its holding that all of the insurance policies were marital property.
 {¶ 66} Appellant's fourth assignment of error is, therefore, sustained.
 {¶ 67} Accordingly, the judgment of the Stark County Court of Common Pleas, Family Court Division, is affirmed, in part, reversed, in part, and this matter is remanded to the trial court for further proceedings.
Edwards, J., Gwin, P.J., Wise, J., concur.
[1] Appellant was refusing to pay the insurance on the Nissan.
[2] While appellant testified the balance on the mortgage was $45,086.00, the trial court used a figure of $44,600.00.
[3] As is stated in the facts, the trial court awarded appellant the first $32,500, representing his separate property interest. Taking the fair market value of the property ($135,000) less the debt on the same ($44,600) and less appellee's separate property interest ($32,500), we arrive at a figure of $57,900. Half of such figure is $28,950.
[4] Assumes that the trial court meant to award this asset to appellant.
[5] Assumes that the trial court meant to award this asset to appellant.
[6] While the appraisal of the personal property lists the value at $23,959, such appraisal included the value of the Dodge truck awarded to appellee, which was valued at $9,500. Deducting the $9,500 from the $23,959 results in a value of $14,459.
[7] In the case sub judice, appellee filed a separate appeal from the trial court's February 3, 2003, Judgment Entry. Such appeal was assigned Case No. 2003CA00055. While, in such case, appellee did file a motion to remand with this Court so that his Civ. R. 60(B) motion could be considered by the trial court, we note that Case No. 2003CA00055 was dismissed by this Court for want of prosecution on July 22, 2003.