OPINION
{¶ 1} This is an appeal from the April 28, 2005 judgment entry and decree of divorce of the Franklin County Court of Common Pleas, Division of Domestic Relations, that terminated the marriage between Eric and Melinda Heyman. Appellant, Melinda Heyman (n.k.a. Melinda Wilson), filed her notice of appeal on May 13, 2005. On May 23, 2005, appellee and cross-appellant, Eric Heyman, filed a notice of cross-appeal. Both parties challenge orders contained within the court's divorce decree.
 {¶ 2} Eric and Melinda were married on August 11, 1995. One child, who is still a minor, was born as issue of the marriage.[1] On December 5, 2001, Eric Heyman filed for divorce, claiming, among other things, incompatibility. On June 24, 2002, Melinda filed an answer and counterclaim, also alleging incompatibility. Because both parties sought custody of their child, the court subsequently appointed a guardian ad litem to represent the child's best interests.
 {¶ 3} The trial court heard the matter over a period of six days, beginning September 8, 2004, and continuing sporadically through October 15, 2004. On November 22, 2004, the parties submitted written closing arguments. On April 28, 2005, the trial court issued its judgment entry and decree of divorce, from which both parties appeal.
 {¶ 4} Appellant, Melinda Heyman, raises four assignments of error:
I. First Assignment of Error
The trial court erred in failing to award attorney fees to the Defendant-Appellant.
II. Second Assignment of Error
The trial court erred in awarding child support to the Plaintiff-Appellee and in making the child support effective July 1, 2002.
III. Third Assignment of Error
The trial court erred when it failed to find the $25,000.00 from Defendant-Appellant's Father to purchase the marital residence to be a loan.
IV. Fourth Assignment of Error
The trial court erred in finding a De Facto Termination date of the marriage of July 1, 2002.
 {¶ 5} Appellee, Eric Heyman, cross-appeals and raises four assignments of error:
1. THE TRIAL COURT ERRED, ABUSED ITS DISCRETION, AND RULED AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE WHEN IT FOUND THAT APPROXIMATELY $14,000.00 RECEIVED FROM THE [APPELLEE'S] PARENTS WAS A GIFT AND FURTHER ORDERED [APPELLEE] TO REIMBURSE TO [APPELLANT] ONE-HALF OF THE APPROXIMATELY $7,500.00 THAT [APPELLEE] HAD ALREADY REPAID TO THE [APPELLEE'S] FATHER.
2. THE TRIAL COURT ERRED, ABUSED ITS DISCRETION, AND RULED AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE WHEN IT FOUND THAT $10,000.00 RECEIVED BY [APPELLANT] FROM HER FATHER FOR THE PURCHASE OF HER SALON, STUDIO 36, WAS A MARITAL DEBT AND ORDERED THE [APPELLEE] TO PAY ONE-HALF OF THE AMOUNT OF $7,500.00 AS AND FOR SAID DEBT.
3. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT ORDERED THAT THE TAX DEPENDENCY EXEMPTION FOR THE PARTIES' MINOR CHILD WOULD BE ALTERNATED EVERY OTHER YEAR BETWEEN THE PARTIES WITHOUT MAKING ANY SUCH FINDINGS TO SUPPORT SAID ORDER AS REQUIRED BY R.C. 3119.82.
4. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT (1) FAILED TO PROPERLY CONSIDER ALL OF THE RELEVANT FACTORS AND PROVISIONS OF R.C. 3105.171 WHEN IT DIVIDED THE PARTIES' PROPERTY IN AN INEQUITABLE MANNER AND (2) USED FIGURES THAT WERE NOT IN EVIDENCE TO CREATE "ATTACHMENT A" AND DID NOT ACCURATELY SET FORTH THE COURT'S WRITTEN ORDERS INTO "ATTACHMENT A," WHICH OUTLINED THE COURT'S FINAL DIVISION OF THE PARTIES' PROPERTY.
 {¶ 6} Appellant's first assignment of error contends that the trial court erred in not awarding attorney fees. Specifically, appellant argues that the trial court applied the wrong statute in considering her request for fees. Appellant additionally asserts that the court's failure to render an award of reasonable attorney fees is in error because it is inequitable.
 {¶ 7} In its April 28, 2005 decision, the trial court applied the analysis set forth in R.C. 3105.18(H) to ascertain the propriety of awarding appellant attorney fees. However, H.B. No. 36 ("H.B. 36") amended R.C. 3105.18, deleting subsection (H), effective April 27, 2005. H.B. 36 also introduced R.C. 3105.73, entitled "Award of attorney fees and litigation expenses," to replace the deleted R.C. 3105.18(H). Appellant asserts that the trial court was required to apply R.C. 3105.73 — not R.C.3105.18(H) — as it was the effective statute on the date the court issued its judgment entry.
 {¶ 8} Appellee counters that the trial court applied the correct statute. Other than the filing of the court's judgment entry, all the pertinent phases of the case — from the filing of the complaint through the actual trial and closing statements — occurred prior to the effective date of the statutory changes. Therefore, appellee contends that the application of R.C. 3105.73
to the court's analysis would be inherently retroactive. Appellee submits that the changes introduced by H.B. 36 are substantive in nature, rather than merely remedial or procedural. As such, appellee argues that the retroactive application of R.C. 3102.73 to this case is improper.
 {¶ 9} Our analysis begins with reference to the interaction of two sections of the Ohio Revised Code and a provision of the Ohio Constitution. Section 1.48 of the Ohio Revised Code states that "[a] statute is presumed to be prospective in its operation unless expressly made retrospective." The same is true of amendments made to previously enacted statutes, an observation strengthened by the savings provision contained within R.C. 1.58, which states:
(A) The reenactment, amendment, or repeal of a statute does not, except as provided in division (B) of this section:
(1) Affect the prior operation of the statute or any prior action taken thereunder;
(2) Affect any validation, cure, right, privilege, obligation, or liability previously acquired, accrued, accorded, or incurred thereunder; [or]
* * *
(4) Affect any investigation, proceeding, or remedy in respect of any such privilege, obligation, liability, penalty, forfeiture, or punishment; and the investigation, proceeding, or remedy may be instituted, continued, or enforced, and the penalty, forfeiture, or punishment imposed, as if the statute had not been repealed or amended.
Thus, a change to a relevant statutory provision should have no bearing on a case already pending before the court, unless the legislature specifically expressed its intent to implement the amendment retroactively.
 {¶ 10} In the event that the legislature does manifest its intent to have a statutory amendment applied retrospectively, the constitutional protections afforded against retroactive legislation must be considered. Section 28, Article II, Ohio Constitution provides:
The general assembly shall have no power to pass retroactive laws, or laws impairing the obligation of contracts; but may, by general laws, authorize courts to carry into effect, upon such terms as shall be just and equitable, the manifest intention of parties, and officers, by curing omissions, defects, and errors, in instruments and proceedings, arising out of their want of conformity with the laws of this state.
Ohio courts have long interpreted this constitutional mandate to proscribe the retroactive application of laws that are substantive in nature only; laws of a remedial nature are permitted to be retrospective in their operation. Rairden v.Holden (1864), 15 Ohio St. 207; EPI of Cleveland v. Limbach
(1989), 42 Ohio St.3d 103. Accordingly, if a statute is purely remedial, it may be applied retroactively; however, a law that is substantive in its nature may only be applied prospectively.
 {¶ 11} Here, it is undisputed that the legislature intended the amendment to R.C. 3105.18 and the creation of R.C. 3105.73
enacted by H.B. 36 to be applied retroactively.[2] Thus, the initial question set forth by R.C. 1.48 is positively answered and we must decide whether R.C. 3105.73 may be applied retroactively without offending the Ohio Constitution. This inquiry "requires a determination as to whether the statute affects a substantial right or if it is merely remedial."Zempter v. Ohio State Grange Mut. Ins. Co. (Sept. 6, 1995), Scioto App. No. 95CA2326, citing Nease v. Medical College Hosp.
(1992), 64 Ohio St.3d 396.
 {¶ 12} The distinction between substantive and remedial statutes can be difficult to define, as a statute often contains attributes of both. Generally, though, the Ohio Supreme Court has found a statute to be substantive if it impairs or takes away vested rights, affects an accrued substantive right, imposes new or additional burdens, duties, obligations or liabilities as to a past transaction, creates a new right, or gives rise to or takes away the right to sue or defend actions at law. Van Fossen v.Babcock Wilcox Co. (1988), 36 Ohio St.3d 100, 107. On the other hand, "[r]emedial laws are those affecting only the remedy provided." Id. Laws of a remedial nature are often characterized as those that provide rules of practice, courses of procedure, methods of review, or a new or more appropriate remedy. Id. at 108; In re Thompson (Apr. 26, 2001), Franklin App. No. 00AP-1358. Thus, a remedial law may affect the procedure by which a right is enforced, but it should not affect the right itself.Van Fossen, supra, at 108.
 {¶ 13} After review, we find that R.C. 3105.73 is remedial in nature. The new statute does not impose a new duty, burden or obligation, nor does it create a new cause of action or eliminate an existing right. R.C. 3105.73 merely affects the procedure by which a court reviews a request for an award of attorney fees in a divorce action. Accordingly, we hold that the trial court erred by not applying R.C. 3105.73 when it considered appellant's request for attorney fees.
 {¶ 14} Both appellant and appellee contest the trial court's findings regarding sums of money that were either gifted or loaned by each party's parents. Appellant's third cross-assignment of error asserts that the trial court erred in finding that her father gave the couple $25,000 for the purchase of the marital residence as a gift, rather than a loan. Similarly, appellee's first cross-assignment of error challenges the trial court's holding that $14,000 received from his parents constituted a gift to the couple, rather than a loan. Additionally, appellee's second assignment of error submits that the trial court erred in ruling that the $10,000 appellant received from her father to purchase a hair salon was a marital debt, rather than appellant's individual debt.
 {¶ 15} Generally, a trial court's division of property lies soundly within its broad discretion and will not be overturned absent an abuse of that discretion. Cherry v. Cherry (1981),66 Ohio St.2d 348, paragraph two of the syllabus. However, a trial court's characterization of property, whether separate versus marital or loan versus gift, is reviewed under a manifest weight of the evidence standard. Garish v. Garish (Mar. 10, 1998), Franklin App. No. 97APF06-813, citing James v. James (1995),101 Ohio App.3d 668, 684. Under this deferential standard, the trial court's classification of property will not be reversed if it is supported by some competent, credible evidence. Barkley v.Barkley (1997), 119 Ohio App.3d 155, 159.
 {¶ 16} With the foregoing in mind, we first address appellant's argument that the money provided by her father as a down payment for the purchase of the marital residence was a loan, rather than a gift to the parties. As noted by the trial court, there is no dispute that appellant's father, Woodrow Larry Wilson, contributed $25,000 toward the purchase of the marital residence. However, the parties disagree about the nature of the funds provided. Appellant argues that the money was a loan that requires repayment, while appellee asserts that it was a gift to the couple.
 {¶ 17} The trial court determined that Mr. Wilson intended the money to be a gift to the parties, as a couple, for the purchase of their home. The court recognized that appellant and her father both testified that the money was intended to be a loan. However, the court also noted that Mr. Wilson's testimony conflicted: at one point he characterized the money as a loan to the couple and, on a second occasion, he referred to it as a loan to appellant only. Moreover, the document in which the sum was first referred to as a loan was prepared for appellant's counsel upon discovering that the money was an issue in the divorce proceedings. Furthermore, Mr. Wilson admits that no loan documentation was ever prepared, nor were repayment terms ever discussed. Conversely, appellee produced the loan application for the marital residence, which listed the $25,000 as "gift funds," and testified that the money was never referred to as a loan until after he filed for divorce.
 {¶ 18} After reviewing the evidence, we find that there is some competent, credible evidence to support the trial court's decision. Appellant's contention that appellee provided conflicting testimony regarding his recollection of the character of the money does not persuade us to find otherwise. It is the place of the trial court, not the reviewing court, to assess the credibility of the witnesses. Rogers v. Rogers (Sept. 2, 1997), Franklin App. No. 96APF10-1333. Regardless of appellant and Mr. Wilson's testimony to the contrary, the mortgage application, lack of a promissory note or repayment terms, and the suspect timing of the characterization of the money as a loan support the trial court's conclusion that the $25,000 received from Mr. Wilson was intended as a gift to the couple. Appellant's third assignment of error is overruled.
 {¶ 19} Next, we address appellee's first and second cross-assignments of error, which also challenge the trial court's characterization of sums received by the parties during their marriage. Appellee first questions the trial court's conclusion that $14,000 received from his parents was intended as a gift, despite the repayment of half of the funds. Appellee also raises issue with the trial court's resulting order that he reimburse appellant one-half of the repaid funds.
 {¶ 20} The parties received approximately $14,000 from appellee's parents in order to lower their debt-to-income ratio in preparation of obtaining a mortgage loan for their marital residence. Appellee testified that approximately $7,000 came from his father, with the remainder coming from his mother. As appellee's parents are divorced and live separate lives, each parent independently transferred his or her own payment. The money was deposited directly with the holder of the automobile loan being eliminated.
 {¶ 21} Appellee testified that, at the time of the transfer, he told appellant that the money would need to be repaid and that she understood that to be the case. Appellee further explained that, although there was no formal documentation, he and his father had discussed an arrangement for repayment of the money. In fact, appellee did repay his father approximately $7,500 and produced copies of cancelled checks as evidence of repayment. The final payment was dated July 22, 2000, approximately 17 months before appellee filed for divorce.
 {¶ 22} Appellee admitted that he has made no effort to pay his mother back, but testified that he still intends to do so. In contrast to the transaction involving his father, appellee did not testify as to any discussion of repayment terms with his mother. Appellant offered no testimony or evidence to contradict appellee's assertions, but nevertheless argues that the money was intended as a gift.
 {¶ 23} We find that the weight of evidence supports a finding that the money received from appellee's father constituted a loan. While there is no promissory note or written agreement, appellee testified that he and his father had discussed terms of repayment. Further, appellee produced copies of cancelled checks representing $3,650 of payments to his father, three of which specifically reference the Jeep that was paid off with the funds in the memo line. The checks represent payments made over the course of two years, beginning in April 1998 (approximately one year after the money was used to pay off the outstanding auto loan) and ending July 22, 2000, with a check noting that it is the "last payment." The timing of the payments — all made at least 17 months before appellee filed for divorce — negates any inference that the parties treated the transaction as a loan only after appellee filed for divorce and undermines the court's determination that the sum was intended as a gift.
 {¶ 24} The trial court erred in characterizing the $7,000 received from appellee's father as a gift, and in ordering appellee to reimburse appellant for half of the repaid funds. However, other than appellee's testimony that he still intends to repay his mother, there is no credible evidence in the record to corroborate appellee's contention that the money received from his mother was also a loan. Thus, we cannot conclude that the trial court erred in finding that the money from his mother was a gift. Accordingly, appellee's first cross-assignment of error is sustained in part and overruled in part.
 {¶ 25} Appellee's second cross-assignment of error asserts that the trial court also erred in finding that $10,000 given to appellant by her father in order to open a salon constitutes a marital debt for which appellee is partially responsible. Instead, appellee contends that the debt should be attributed to appellant individually. We disagree.
 {¶ 26} Marital property is generally defined as all real and personal property acquired during the marriage that is not separate property. R.C. 3105.171(A)(3); Garish, supra. R.C.3105.171(A)(6)(a) defines separate property:
* * * [A]ll real and personal property and any interest in real or personal property that is found by the court to be any of the following:
(i) An inheritance by one spouse by bequest, devise or descent during the course of the marriage;
(ii) Any real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage;
(iii) Passive income and appreciation acquired from separate property by one spouse during the marriage;
(iv) Any real or personal property or interest in real or personal property acquired by one spouse after a decree of legal separation issued under section 3105.17 of the Revised Code;
(v) Any real or personal property or interest in real or personal property that is excluded by a valid antenuptial agreement;
(vi) Compensation to a spouse for the spouse's personal injury, except for loss of marital earnings and compensation for expenses paid from marital assets;
(vii) Any gift of any real or personal property or of an interest in real or personal property that is made after the date of marriage and that is proven by clear and convincing evidence to have been given to only one spouse.
A trial court is authorized to determine what constitutes marital property and what constitutes separate property by R.C.3105.171(B). We will not disturb the trial court's classification of property as marital or separate absent an abuse of discretion if some competent, credible evidence supports that determination.Barkley, at 159; Garish, supra.
 {¶ 27} On December 30, 2000, appellant opened a beauty salon dubbed Studio 36. There is no dispute that Mr. Wilson tendered the $10,000 used to purchase the necessary equipment to operate Studio 36. Moreover, appellee cannot argue that appellant acquired the salon prior to the date of marriage, which would render the funds invested in the business separate property. R.C.3105.171(A)(6)(a)(ii); Garish, supra. Instead, appellee asserts that the money provided by Mr. Wilson should be attributed to appellant alone because he had no involvement in the transaction or in the operation of Studio 36. However, appellee's lack of involvement is irrelevant to the classification of the funds as marital property. Even appellee seems to realize this, as he testified that he would have expected to receive an equal distribution of any profits had the salon been successful.
 {¶ 28} In the alternative, appellee contends that the start-up capital should not be classified as marital debt because it was a gift to appellant. To support his contention that the money was intended as a gift, appellee asserts that appellant never sought to repay the money, nor has her father sought repayment. However, both Mr. Wilson and appellant testified that the money was a loan, similar to a past loan used to purchase appellant's previous salon, Tangles. As was the case with Studio 36, there was no promissory note or official documentation of the transaction. Nonetheless, evidence presented at trial demonstrated that appellant repaid her father for the previous loan with proceeds from the sale of Tangles, and both testified that repayment was expected on the same terms with Studio 36. Appellant and Mr. Wilson also testified that, while no effort has been made to repay the loan at this time due to appellant's shaky financial situation, repayment of the start-up money is still expected. Additionally, the check used to finance the transaction characterizes the sum as a "loan to Melinda to the purchase of salon equipment" in the memo line. No testimony other than appellee's own assumption supports his contention that the money used to purchase Studio 36 was intended as a gift. In fact, appellee himself testified that appellant told him that she borrowed the money she needed to purchase Studio 36 from her father.
 {¶ 29} With no clear and convincing evidence to the contrary, the fact that the salon was purchased and operated during the marriage is sufficient to support the trial court's conclusion that the unpaid start-up money is marital in nature. That appellant abandoned the salon without attempting to sell the business or its equipment — choosing instead to leave approximately $2,500 of the equipment within the rented studio space as payment for rental arrearage — does not transform the nature of the debt from marital to separate. However, appellant's blatant failure to mitigate the loss of the business does support the trial court's decision to allocate the same amount of debt to appellant alone, leaving $7,500 of debt to be shared equally between the parties. Appellee's second cross-assignment of error is thus overruled.
 {¶ 30} We now turn to appellant's fourth assignment of error, which faults the trial court for declaring July 1, 2002 as the de facto termination date of the marriage. Appellant argues that the trial court should not have declared a de facto termination date because appellee's motion seeking the same was out-of-rule. For the reasons that follow, we find appellant's argument to be unpersuasive.
 {¶ 31} The Ohio Supreme Court has "long recognized that trial courts are vested with broad powers in determining the appropriate scope of property awards in divorce actions." Berishv. Berish (1982), 69 Ohio St.2d 318, 319. The first step in making an equitable distribution of marital property is to determine the duration of the marriage. While courts often use the date of the final hearing as the terminating point of the marriage, that date is not always the most appropriate for the circumstances of any particular case. R.C. 3105.171(A)(2)(a);3105.171(A)(2)(b).
 {¶ 32} Above all, "[t]he choice of a date as of which assets available for equitable distribution should be identified and valued must be dictated largely by pragmatic considerations."Berish, at 319. As the court explained:
Equity may occasionally require valuation as of the date of thede facto termination of the marriage. The circumstances of a particular case may make a date prior to trial more equitable for the recognition, determination and valuation of relative equities in marital assets.
* * * If a trial court was rendered powerless to recognize and determine property rights in assets that do not exist at the time of the final decree, one party, from the time of separation to the time of the final decree, could withdraw all funds and, unilaterally and with impunity, squander the fruits of the marital labor. * * *
Id. at 320-321. Accordingly, Ohio law recognizes that a trial court is permitted to determine and apply different valuation dates, such as the time of permanent separation or the de facto termination of the marriage. Moreover, a court's determination as to when to apply a de facto termination date falls well within the broad discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion. Rogers, supra, citing Gullia v. Gullia (1994), 93 Ohio App.3d 653, 666.
 {¶ 33} In Rogers, this court specifically recognized that the use of an alternative valuation date is proper when "the totality of the circumstances and equitable considerations between the parties demonstrate that there was a clear and bilateral breakdown of the marriage and the parties have ceased contributing to each other" for the other's benefit. Id. We further examined multiple cases of divorce from various Ohio courts and found several common factors considered in determining the propriety of declaring a de facto date of termination. Among others, we noted that factors such as whether the parties made a clear and bilateral decision to separate, whether the marriage was irretrievably broken at the time of separation, whether the separation was friendly, whether the parties engaged in sexual relations after the date of separation, whether either party had begun to cohabitate with another following separation, and whether the parties maintained separate financial arrangements were important indications of the appropriateness of applying a de facto date of termination.
 {¶ 34} Here, the trial court observed that appellant stipulated that a de facto date should be declared. Thus, the sole point of contention was which date: appellee argued for January 31, 2002, while appellant argued that a date in July 2002 should be applied. After carefully considering all of the factors outlined in Rogers, the court found that the evidence supported a July 1, 2002 de facto termination date. At that time, the parties had not had intimate relations since appellee filed for divorce, both parties believed the marriage was over, both parties had obtained counsel, the parties had maintained their own separate finances, and, most notably, appellant had moved out of the marital residence and had begun to cohabitate with Brian Thomas, her current significant other.
 {¶ 35} Despite appellant's contention, we cannot say that the trial court acted unreasonably or arbitrarily in deciding to apply a de facto termination date of July 1, 2002. Appellant's argument that the court should not have entertained appellee's request to apply a de facto date must also fail. While the motion was untimely under Civ.R. 6(D), which states that a written motion shall be served no later than seven days before the trial date, no motion is required for the trial court to consider the use of a de facto date. It is within the exercise of the court's equitable powers, as well as its statutory authority, for the trial court to declare and apply a date for the division of marital property. Berish, supra; R.C. 3105.171(A)(2)(b). Accordingly, appellant's fourth assignment of error is overruled.
 {¶ 36} In her second assignment of error, appellant submits that the trial court erred in awarding child support to appellee, effective July 1, 2002. As discussed above, the trial court acted within its discretion in using July 1, 2002 as the de facto date from which valuations of marital property were made. Thus, appellant's quarrel with the date from which support payments were ordered to begin is without merit. The only question presently before us is whether the trial court abused its discretion in making an award of child support. Booth v. Booth
(1989), 44 Ohio St.3d 142.
 {¶ 37} Although granted wide discretion, the trial court is obligated to adhere to the statutory guidelines set forth in R.C. Chapter 3119. Specifically, when awarding child support, the trial court must complete a child support computation worksheet and enter that worksheet into the record. Marker v. Grimm
(1992), 65 Ohio St.3d 139, paragraph one of the syllabus. In doing so, the terms of the statute and the corresponding worksheet must be followed literally and technically in all respects. Id., paragraph two of the syllabus. The resultant guideline amount is rebuttably presumed to be the correct and equitable amount of child support. Glassner v. Glassner,160 Ohio App.3d 648, 2005-Ohio-1936, at ¶ 20. A court may order a deviation from that amount, but it must enter that deviation, as well as supporting findings of fact, within its journal entry.Marker, supra, paragraph three of the syllabus.
 {¶ 38} In this case, the parties entered into a shared parenting agreement, which the court adopted in its April 28, 2005 journal entry. Accordingly, we must refer to R.C. 3119.24, which provides:
(A)(1) A court that issues a shared parenting order in accordance with section 3109.04 of the Revised Code shall order an amount of child support to be paid under the child support order that is calculated in accordance with the schedule and with the worksheet set forth in section 3119.022 [3119.02.2] of theRevised Code, through the line establishing the actual annual obligation, except that, if that amount would be unjust or inappropriate to the children or either parent and would not be in the best interest of the child because of the extraordinary circumstances of the parents or because of any other factors or criteria set forth in section 3119.23 of the Revised Code, the court may deviate from that amount.
(2) The court shall consider extraordinary circumstances and other factors or criteria if it deviates from the amount described in division (A)(1) of this section and shall enter in the journal the amount described in division (A)(1) of this section its determination that the amount would be unjust or inappropriate and would not be in the best interest of the child, and findings of fact supporting its determination.
(B) For the purposes of this section, "extraordinary circumstances of the parents" includes all of the following:
(1) The amount of time the children spend with each parent;
(2) The ability of each parent to maintain adequate housing for the children;
(3) Each parent's expenses, including child care expenses, school tuition, medical expenses, dental expenses, and any other expenses the court considers relevant;
(4) Any other circumstances the court considers relevant.
(Emphasis sic.) The court is also permitted to consider any of the factors enumerated in R.C. 3119.23 in determining whether to grant a deviation from the originally computed amount.
 {¶ 39} After finding appellant to be voluntarily unemployed pursuant to R.C. 3119.01(C)(11)(a), the court imputed a yearly income of $25,000 based on appellant's own testimony, as well as the testimony of a vocational expert.[3] Thereafter, the court went through the computations according to the correct guidelines and discussed the time of custody allocated to each party under the shared parenting plan. The court named appellant as the obligor and cited the original guideline amount of $324.75 per month, plus a processing charge.
 {¶ 40} The court continued to find that the guideline amount would be unjust, inappropriate and not in the best interests of the child. The court noted that parenting time was almost equal under the shared parenting agreement and that both parties testified that the parent who then cared for the child paid day-to-day expenses. The court also observed the disparity in incomes, with appellee reporting more then double appellant's imputed income. Yet the court also concluded that appellant enjoyed the approximately $30,000 of added income contributed by her significant other, with whom she lives. Thus, considering these observations, among others, under factors (D), (G), (J), (L) and (O) of R.C. 3119.23, the court announced a deviation of $124.75 per month. Thus, appellant's total child support obligation amounted to $204 per month ($200 plus a two percent processing fee).
 {¶ 41} Upon review of the trial court's computations, we can find no impermissible divergence from the statutory mandates. That appellant had expected to be the obligee rather than the obligor is of no consequence to this conclusion. The trial court's analysis conforms to the statutory guidelines found within R.C. 3119.24 and 3119.23 and exhibits no suggestion of inappropriate, arbitrary or unconscionable reasoning. Accordingly, though we may have reached a different conclusion, we cannot disturb the decision as being an abuse of discretion. Appellant's second assignment of error is overruled.
 {¶ 42} We next turn to appellee's third cross-assignment of error, in which he finds fault with the trial court's decision that the parties must share the income tax deduction attributed to their minor child. Appellee sought the exclusive right to claim the minor child on his income taxes, while appellant sought an alternating schedule. The trial court ultimately agreed with appellant and ordered the tax deduction to be alternated every other year between the parties. Appellee asserts that the trial court's decision amounts to an abuse of discretion. Appellee further complains that the trial court did not consider the factors listed in R.C. 3119.82 in making its decision.
 {¶ 43} R.C. 3119.82 governs the designation of which parent is entitled to claim a federal income tax deduction for the dependent child. The statute provides, in pertinent part:
Whenever a court issues * * * a court child support order, it shall designate which parent may claim the children who are the subject of the court child support order as dependents for federal income tax purposes as set forth in [the appropriate section of the Internal Revenue Code]. * * * If the parties do not agree [on which parent should claim the child], the court, in its order, may permit the parent who is not the residential parent and legal custodian to claim the children as dependents for federal income tax purposes only if the court determines that this furthers the best interest of the children * * *. In cases in which the parties do not agree which parent may claim the children as dependents, the court shall consider, in making its determination, any net tax savings, the relative financial circumstances and the needs of the parents and children, the amount of time the children spend with each parent, the eligibility of either or both parents for the federal earned income tax credit or other state or federal tax credit, and any other relevant factor concerning the best interest of the children.
Based on the language of the statute, appellee asserts that the court abused its discretion by not determining that alternating the tax exemption would be in the best interest of the minor child and by not specifically addressing each enumerated factor.
 {¶ 44} Appellee submits that Foster v. Foster, Sandusky App. No. S-03-037, 2004-Ohio-3905 supports his position. TheFoster court noted that, under federal law, the dependency exemption is presumptively granted to the custodial parent. Id., citing Hughes v. Hughes (1988), 35 Ohio St.3d 165, 167. However, the trial court is free to allocate the exemption to the noncustodial parent if the record shows that the allocation furthered the best interests of the child. Id., citing Bobo v.Jewell (1988), 38 Ohio St.3d 330, 332. The court continued to find that, "[w]hile all of the [R.C. 3119.82] factors must be considered and individually weighed, the crux of the issue is the best interest of the child." Foster, at ¶ 22. Finding that the trial court considered the proper issues and found that the best interest of the child was met by granting the dependency exemption to the noncustodial parent, the Foster court found no abuse of discretion.
 {¶ 45} In Lopez v. Lopez, Franklin App. No. 04AP-508,2005-Ohio-1155, this court reached a similar conclusion. InLopez, we held:
Absent a determination that the designation of plaintiff as the parent who could claim the parties' minor daughter as a dependent for federal income tax purposes was in the best interest of the parties' child, we conclude that the trial court's determination did not comport with the requirements of R.C. 3119.82. Furthermore, because the trial court's determination failed to include any reasoning process to support its decision to award the federal dependent child exemption to [the non-residential parent], we also conclude that the trial court abused its discretion. * * *
Id. at ¶ 53.
 {¶ 46} While the factual circumstances of this case are different, we find the general themes of Foster and Lopez to be instructive. Notably, in those cases, there was a single residential parent and legal custodian, while the other parent enjoyed only visitation rights. Here, both parents enjoy custody rights over the minor child, with appellee deemed the residential parent for school placement purposes only. Regardless, the language of R.C. 3119.82 specifically states that if the parties do not agree about the allocation of the tax exemption, "the court shall consider" the listed criteria, including the general best interest of the child. Id.
 {¶ 47} The trial court's decision is void of any discussion regarding the factors enumerated in R.C. 3119.82. Nor does the entry contain any indication that the trial court weighed the best interests of the child in deciding that the tax exemption should alternate between the parties. Accordingly, as was the case in Lopez, we must conclude that the trial court abused its discretion. Appellee's third cross-assignment of error is sustained.
 {¶ 48} We conclude our review with appellee's fourth cross-assignment of error. Appellee contends that the trial court erred in failing to properly consider all of the relevant factors and provisions of R.C. 3105.171 and distributing the marital property inequitably. Appellee also submits that the trial court inaccurately set forth the written orders contained within its journal entry when it created "Attachment A," an outline of the court's final division of property.
 {¶ 49} R.C. 3105.171(C)(1) provides, as is relevant:
Except as provided in this division or division (E) of this section, the division of marital property shall be equal. If an equal division of marital property would be inequitable, the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable. In making a division of marital property, the court shall consider all relevant factors, including those set forth in division (F) of this section.
Thus, the court's attention is also called to R.C.3105.171(F)(9), which sets forth nine different factors, including the catch all "[a]ny other factor that the court expressly finds to be relevant and equitable," that a court must consider in making a division of marital property.
 {¶ 50} A trial court is granted broad discretion in the division of property in divorce actions. Berish, supra, at 319. However, that discretion is not without limits. The court's award "must be equitable, and the court must address the statutory factors in arriving at its division of marital property." Neelv. Neel (1996), 113 Ohio App.3d 24, citing Bisker v. Bisker
(1994), 69 Ohio St.3d 608, 609. Moreover, a "trial court must indicate the basis for its award in sufficient detail to enable a reviewing court to determine that the award is fair, equitable and in accordance with the law." Kaechele v. Kaechele (1988),35 Ohio St.3d 93, paragraph two of the syllabus.
 {¶ 51} Appellee's assignment of error is presented in a way that suggests he argues a three-fold fault in the trial court's decision. The first being that the marital property was divided inequitably, the second that the court did not consider all the relevant factors and provisions of R.C. 3105.171, and the third that the award evidenced in "Attachment A," which outlined the final division of property, conflicts with the trial court's actual award as set out throughout its decision. Because all three issues are entangled with the third, we will begin our analysis there.
 {¶ 52} After comparing the trial court's written order with Attachment A, we find that there is a clear discrepancy between the two. For example, in its journal entry, the court ordered that the combined value of the marital vehicles — $9,271.10 — be divided equally between the parties. The court also allocated possession and the responsibility of any necessary payments to appellee, free and clear of any claim by appellant. However, in Attachment A, the court assigned the full amount of the marital value in the vehicles to appellee. Furthermore, Attachment A erroneously listed the value of the Jeep Wrangler as $7,957.60 — the loan balance on the Dodge Ram as of July 1, 2002 — rather than the correct value, $7,078.70, as reflected in the written order.
 {¶ 53} The trial court's written order and Attachment A also conflict with regard to the Fifth Third Loan Quick Lease ("Quick Lease") account created when the parties' lease on a Dodge Durango terminated. Upon surrendering the Durango at the end of the lease, an extra mileage fee of $2,278.08, fees of $809.68, and a fee of $300 in late fees for non-payment of the lease were assessed and rolled into the Quick Lease. With interest, the Durango debt totaled $3,535.59. The trial court noted that the parties agreed to pay the debt with escrowed funds and continued to distribute the debt equally between the parties, except the $809.68 that was directly attributable to appellant's failure to comply with temporary orders of the trial court. Additionally, the trial court ordered the reallocation of $400 paid on the Quick Lease by appellee. However, Attachment A is void of any indication that the $400 was actually reallocated. In fact, there are no calculations shown on Attachment A. Instead, the trial court merely assigned totals to be allocated from the escrow account with a note that "[appellant's] portion includes marital funds owed to [her] by [appellee]."
 {¶ 54} A final example of contraction can be found wholly within the court's written order. As mentioned above, the court ordered the value of the marital vehicles to be distributed equally between the parties. However, the court subsequently distributed the entire marital value of appellee's IRA account ($5,500.27) to appellant "to offset — in part — the marital value of the motor vehicles that were awarded to [appellee]." Though the trial court was correct to provide a factual finding to support an unequal distribution, the distribution itself is at odds with its previous order regarding the vehicles.
 {¶ 55} Based on the foregoing conflicts, both internally contained within the order and between the order and the attachment, we find that the court abused its discretion in ordering the distribution of marital property and sustain appellee's fourth cross-assignment of error. This court is not in a position to recreate Attachment A in a manner consistent with the trial court's order. Instead, due to the merits of appellee's first cross-assignment of error, the trial court must reconsider its allocation of $3,750 to appellant to "reimburse" her for monies repaid to appellee's father. On remand, the trial court is instructed to reassess its distribution of marital property in light of our ruling today. Furthermore, the trial court is instructed to ensure that any unequal distribution of property is accompanied by the requisite supporting findings of fact. SeeKaechele; Neel, supra; Crofut v. Crofut, Stark App. No. 2003CA00053, 2003-Ohio-6801, ¶ 56 ("In dividing marital assets, and in deciding whether to order an unequal award, a trial court must consider all relevant factors, including those listed in R.C. 3105.171[F]").
 {¶ 56} Based on the foregoing, we sustain appellant's first assignment of error, as well as appellee's first, third and fourth cross-assignments of error. Appellant's second, third and fourth assignments of error are overruled, as is appellee's second cross-assignment of error. The judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, is affirmed in part, reversed in part, and remanded with instructions.
Judgment affirmed in part and reversed in part; causeremanded.
Sadler and McGrath, JJ., concur.
[1] A second child was born while the parties were separated, but before the final hearing and judgment entry. However, the parties entered a joint stipulation acknowledging that Melinda's significant other is that child's biological father. Likewise, Melinda's significant other acknowledges his paternity.
[2] H.B. No. 36, Section 3 provides: Section 3105.18 of the Revised Code, as amended by this act, and section 3105.73 of the Revised Code, as enacted by this act, apply to any action for divorce * * * or any post-decree action or proceeding arising from a divorce * * * if any of the following apply:
(A) The action or proceeding is brought, or a notice of appeal in the action or proceeding is filed, on or after the effective date of this act.
(B) The action or proceedings is brought, or a notice of appeal in the action or proceeding is filed, prior to the effective date of this act, and the action or proceeding is pending in a trial or appellate court on the effective date of this act.
(C) Any proceeding arising from a motion to modify a prior order or decree in the action or proceeding is pending in a trial or appellate court on the effective date of this act.
[3] Appellant raises no argument against the amount of her imputed income.