DECISION AND JUDGMENT
{¶ 1} This is an appeal from a judgment of the Sandusky County Court of Common Pleas which modified appellant's monthly child support obligation pursuant to an administrative appeal filed by appellee. For the reasons set forth below, this court affirms the judgment of the trial court.
 {¶ 2} Appellant, Michael L. Sipsma, sets forth the following three assignments of error: *Page 2 
 {¶ 3} "I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN THAT ITS DECISION DOES NOT COMPLY WITH THE REQUIREMENTS OF OHIO REVISED CODE CHAPTER 3119.
 {¶ 4} "II. THE TRIAL COURT'S DECISION WAS CONTRARY TO THE STATED FINDINGS OF THE TRIAL COURT DURING TRIAL.
 {¶ 5} "III. THE TRIAL COURT'S DECISION WAS AGAINST THE SUFFICIENCY AND/OR MANIFEST WEIGHT OF THE EVIDENCE PRESENTED AT TRIAL."
 {¶ 6} The following undisputed facts are relevant to the issues raised on appeal. This case stems from a 1997 divorce between the parties. Appellant's monthly child support responsibility was set at $629.85. In 1999, appellant was terminated from his employment with the Whirlpool Corporation.
 {¶ 7} Given the change in his employment status, appellant filed an administrative appeal to reset his support order. On December 12, 1999, with the consent of appellee, appellant's monthly child support obligation was reduced to $297.38. Appellee consented to this support modification lowering appellant's child support obligation to approximately $70 per week in consideration of appellant's uncertain future income.
 {¶ 8} During approximately this same timeframe, appellant launched a new hobby products business in concert with his father known as Track Action, Ltd. By 2000, appellant's business venture specializing in model cars experienced rapid growth resulting in annualized revenue of approximately $750,000. *Page 3 
 {¶ 9} Appellant's sole partner in this business venture was his father. Appellant was primarily responsible for the conduct of the Fremont-based business as his father spent the bulk of his time at a condo on Lake Erie during the summer months and wintered at his home in Paradise Valley, Arizona. The organizational resolutions of the business established that appellant possessed a 90 percent ownership interest, with his father owning the remaining 10 percent stake in the business. Given this ownership apportionment, appellant was the predominant owner and income beneficiary of the family-owned business venture.
 {¶ 10} Interestingly, while the business 90 percent owned by appellant reported gross revenue of approximately $750,000 and partnership income in excess of $108,000, even after substantial claimed business deductions were taken, appellant reported adjusted gross income in 2000 of $17,564.
 {¶ 11} On January 17, 2001, appellee filed an administrative appeal for support modification given the upward shift in the financial fortunes of appellant. Counsel for appellee filed at least five separate subpoenas for appellant to produce income documentation. Appellant failed to respond. On July 20, 2001, a judgment entry ordered appellant to supply the information. Appellant failed to respond. Ultimately, multiple contempt citations were filed against appellant.
 {¶ 12} On December 17, 2001, appellant was deposed by counsel for appellee. Prior to the deposition, six additional subpoenas were issued regarding appellant's income and financial dealings. On January 14, 2002, appellee's child support modification *Page 4 
request went to hearing. Voluminous testimony was taken both from appellant and also from the member services manager of appellant's credit union. The court itself demanded and secured the testimony from the manager of appellant's banking institution given discrepancies between appellant's testimony and his financial records.
 {¶ 13} During the course of the hearing it became apparent that appellant misperceived that a multitude of business expense deductions taken for purposes of minimizing taxable business income could likewise be utilized in equal measure to reduce his income level for purposes of his child support obligations. The court attempted to convey to appellant that this understanding was not accurate.
 {¶ 14} The hearing concluded with the parties being instructed to submit final briefs and arguments to the court. On October 6, 2003, the court granted a motion by appellee to strike a portion of appellant's final submitted arguments.
 {¶ 15} On June 19, 2006, the trial court issued a judgment entry modifying appellant's adjusted gross income for child support purposes for 1999 and 2000. The court ordered the local child support enforcement agency ("CSEA") to conduct an audit of 2001 income records of the parties.
 {¶ 16} On September 22, 2006, the CSEA filed the ordered audit. In a subsequent effort to resolve the matter, it was referred to mediation. On March 30, 2007, a report was filed with the court that mediation had failed. On June 15, 2007, the court ordered appellant to furnish updated income information in response to a motion to compel. *Page 5 
 {¶ 17} On October 10, 2007, based upon its June 19, 2006 judgment entry and the subsequent CSEA audit, the trial court issued a judgment modifying appellant's child support order to $1,185.91 per month. Appellant filed a timely notice of appeal of this 2007 judgment increasing the amount of his child support obligation.
 {¶ 18} In his first assignment of error, appellant asserts that the trial court erred and failed to comply with the child-support computation requirements set forth in R.C. 3119. The crux of appellant's argument in support is the contention that the court breached R.C. 3119
by failing to admit appellant's tax returns for 1999 and 2000 into evidence at the child-support modification hearing.
 {¶ 19} R.C. 3119.05(A) establishes that a court's computation of the amount of a child support order must be based upon verification of earnings, "with suitable documents, including, but not limited to, pay stubs, employer statements, receipts and expense vouchers related to self-generated income, tax returns, and all supporting documentation and schedules for tax returns." In conjunction with this statutory tax return requirement, appellant asserts based upon an excerpt of the transcript of the hearing that his 1999 and 2000 tax returns required by R.C. 3119 were never admitted into evidence. The transcript testimony states in relevant part:
 {¶ 20} "Ms. Fiser: I guess I'd like to withdraw it and enter in the partnership return, the complete return.
 {¶ 21} The Court: Which includes the K-1.
 {¶ 22} Ms. Fiser: It includes the K-1, your honor, plus all the supporting documentation. *Page 6 
 {¶ 23} The Court: Okay. So we're getting rid of plaintiff s Exhibit 1, you're withdrawing that. And you're withdrawing plaintiff's Exhibit 2?
 {¶ 24} Ms. Fiser: Yes. For the same reason, because that's not going to be complete."
 {¶ 25} Appellant's proffered conclusion based upon the above exchange fails to recognize that later in the hearing counsel for appellee altered course and explicitly notified the court that she was electing to have these two disputed exhibits go into evidence. This portion of the transcript states in relevant part:
 {¶ 26} "The Court: What did we do with Plaintiff's Exhibit 1 and 2?
 {¶ 27} Ms. Fiser: Your Honor, I'm going to leave them in. There is some discrepancy between the one that was supplied to me, but I don't want to muddy the waters with this, so I'm going to leave Plaintiff's 1 and 2 in."
 {¶ 28} While plaintiff's first assignment is rooted in the assertion that the trial court failed to take into evidence and review adequate documentation of appellant's earnings in calculating income and corresponding child support obligation amounts, our review of the record reflects otherwise.
 {¶ 29} The record establishes that the trial court conducted a lengthy and detailed hearing taking direct testimony from appellant regarding his income and expenses. The court simultaneously took into evidence a dozen exhibits consisting of appellant's business and personal tax returns, banking statements, business profit and loss reports, and the organizational resolution of appellant's business. In addition, the trial court, on *Page 7 
its own initiative, secured an appearance from the manager of appellant's credit union and heard voluminous testimony from that witness regarding the meaning of various transactions in appellant's personal banking records.
 {¶ 30} Ultimately, the trial court determined that appellant represented net income levels for child-support purposes which utilized various business tax deductions disallowed for child-support purposes. Contrary to appellant's claims, the court possessed ample testimony and documentation from which to calculate appellant's income subject to child-support orders for the disputed tax years and modify the order in tandem with the evidence.
 {¶ 31} As unambiguously elucidated in Dannaher v. Newbold, 10th Dist. Nos. 05AP-172 05AP-650, 2007-Ohio-2936, "The purposes underlying the Internal Revenue Code and the child-support guidelines are vastly different. The tax code permits or denies deduction from gross income based on myriad economic and social policy concerns which have no bearing on child-support. The child support guidelines in contrast are concerned solely with determining how much money is actually available for child support purposes. To this end, R.C. 3113.215(A)(2)[now R.C. 3119.01(C)(7)] includes non-taxable income in gross income for purposes of calculating child support. This recognized the economic reality that all money earned by a parent, irrespective of its taxability, is in fact income to that parent."
 {¶ 32} This is precisely the type of scenario involved in the instant case. Appellant is the 90 percent owner of a business which grossed nearly $750,000 in 2000. *Page 8 
Due to various business deductions, not relevant to child-support obligations, appellant's 2000 partnership return reported income of $108,148. Appellant mistakenly believed that the voluminous deductions he availed himself of for purposes of his own tax obligations translated into similarly income-lowering deductions for child-support obligations. This mistaken premise, not the court's disputed actions, is what is reflected in the record to be contrary to R.C. 3119. We find appellant's first assignment of error not well-taken.
 {¶ 33} We will now consider appellant's third assignment of error. It is based upon the same underlying premise, evidence and analysis as the first assignment. In his third assignment of error, appellant asserts that the trial court's decision was against the sufficiency and/or manifest weight of the evidence.
 {¶ 34} When determining whether a disputed judgment was contrary to the manifest weight of the evidence, the appellate court serves as a "thirteenth juror" to conclude whether the trial court lost its way so significantly as to result in a manifest miscarriage of justice. In reaching this decision, we grant substantial deference to the trial court's determination given its unique opportunity to closely observe the demeanor and credibility of the witnesses and the evidence presented. State v. Mickles, 6th Dist. No. L-05-1206, 2006-Ohio-3803.
 {¶ 35} As we found in response to appellant's first assignment of error, the disputed trial court judgment increasing the amount of income by appellant subject to child-support obligations was rooted in detailed testimony from appellant, the manager of appellant's financial institution, and numerous financial records admitted into evidence. *Page 9 
 {¶ 36} In conjunction with this evidence, the Sandusky County CSEA also audited the records pursuant to court order and concurred with the court's assessment. The court weighed the evidence, determined that appellant had income subject to child-support obligations in excess of what he purported it to be, and made the necessary calculations in support of an upward modification of appellant's monthly child support obligation. There is nothing in the record establishing that the disputed judgment of the trial court created a manifest miscarriage of justice. We find appellant's third assignment of error not well-taken.
 {¶ 37} In appellant's second assignment of error, he contends that the trial court's decision was contrary to findings during trial. In support, appellant alleges that the trial court made a "finding" during the hearing that appellant's franchise expenses would be utilized as a business expense so as to offset the amount of appellant's child-support obligations. We have carefully reviewed the portion of the transcript relevant to appellant's contention and do not concur with appellant's proffered interpretation of the trial court's statements during the hearing.
 {¶ 38} The record reflects an exchange between the court, appellant, and counsel for appellee during which the court was weighing, not determining, the treatment of appellant's franchise expense. The court stated in relevant part, "interesting question on that franchise. I don't know how that should be treated. It almost sounds like it's a loss, a bad debt." *Page 10 
 {¶ 39} The record clearly shows that while the court weighed the issue of how to treat franchise costs for purposes of appellant's income the court never rendered any definitive judgment despite appellant's claim that the court's decision was contrary to stated findings at trial. The record establishes that there was no "finding" at that time on this issue. Given its reliance on a mistaken interpretation of the events from below, we find appellant's third assignment of error not well-taken.
 {¶ 40} On consideration whereof, the judgment of the Sandusky County Court of Common Pleas is affirmed. Appellant is ordered to pay the cost of this appeal pursuant to App. R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Sandusky County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4.
Mark L. Pietrykowski, J., William J. Skow, P.J., Thomas J. Osowik, J., CONCUR. *Page 1