OPINION
{¶ 1} This is a consolidated appeal from two judgments of the Franklin County Court of Common Pleas, Division of Domestic Relations, following our remand. Case No. 05AP-172 involves the trial court's decision that addressed our remand instructions. In our prior opinion, we remanded the matter to the trial court "to determine whether, and in what amount, to impute income to appellant" and to "determine whether appellant has the ability to pay appellee's attorney fees." See Dannaher v. Newbold, *Page 2 
Franklin App. No. 03AP-155, 2004-Ohio-1003. Case No. 05AP-650 is an appeal from a judgment that awarded Elizabeth Dannaher, plaintiff below and appellee herein, $31,557 in post-decree attorney fees.
 {¶ 2} In case No. 05AP-172, Garold Newbold, defendant below and appellant herein, raises the following assignments of error for review:
 Assignment of Error No. 1
 The trial court erred as a matter of law when it disregarded this court's remand instruction and sua sponte determined an entirely new gross income number for child support purposes as it related to Appellant.
 Assignment of Error No. 2
 The trial court erred and abused its discretion by finding that Appellant had the ability to pay the $50,400.00 in attorneys fees awarded to Appellee.
In case No. 05AP-650, appellant raises the following assignments of error for review:
 Assignment of Error No. 1
 The trial court's decision impermissibly and unconstitutionally applied R.C. 3105.73 to the instant case.
 Assignment of Error No. 2
 The trial court erred as a matter of law when it sua sponte permitted an award of attorneys fees for fees incurred after the date of the motion requesting same.
 Assignment of Error No. 3
 The trial court erred and abused its discretion by awarding appellee any attorneys' fees.
BACKGROUND {¶ 3} The parties had a highly contested divorce. Additional facts may be found in our prior opinion. See Dannaher. *Page 3 
REMAND {¶ 4} On remand, the trial court ordered appellant to pay $1,276.79 as monthly child support based upon his $94,000 annual income. In determining appellant's income, the court did not impute income, but relied upon the evidence contained in the record to arrive at the figure. The court additionally determined that appellant has the ability to pay appellee's attorney fees.
 {¶ 5} The trial court carefully explained its reasoning. Regarding appellant's income, the court stated:
 In determining whether to impute income to the father, the court finds that it would not be appropriate to do so when a th[o]rough review of the testimony and documents in the record allow for a fair determination of income without resorting to the legal device of imputed income. Therefore, as directed by the Court of Appeals, this trial court's determination "as to whether * * * to impute income" to the father, is that it should not impute income to him but rather should determine income based upon the testimony and documents in the record and under the law.
 * * *
 The mother is employed full-time as a paralegal with a Columbus law firm. The evidence shows that her annual income is $46,000, and that she received $3,000 in bonuses in 2002. Although these figures total $49,000, the mother stipulated her annual income to be $50,000.
 The father is 45 years old and has undergraduate and law degrees from Ohio State University. He is a graduate of the police academy, a former assistant county prosecutor, and was an associate with a law firm before becoming a self-employed attorney in 1988. He has no physical or diagnosed mental disabilities that inhibit his ability to earn a living as an attorney in practice for 20 years. All of the father's income is self-generated income, earned as a full-time practicing attorney in the Columbus, Ohio area. *Page 4 
 The father, through his income tax returns, claims 1999 Schedule C gross income of $111,700, ordinary and necessary business expenses of $75,100, and net income of $36,600. He claims 2000 Schedule C gross income of $107,500, ordinary and necessary business expenses of $55,900, and net income of $51,600. He claims 2001 Schedule C gross income of $63,000, ordinary and necessary business expenses of $30,400, and net income of $32,600. On average for the three years, the father claims gross income of $60,700, business expenses in excess of 67%, and net income of $40,300.
 This court takes judicial notice of the survey published in the Ohio Lawyer (Nov/Dec 2004) showing 2003 mean annual net income for full-time private practitioners in downtown Columbus of $133,300 (more than three times the father's alleged income) and 2003 mean annual net income for sole practitioners in Ohio of $91,007, more than two times the father's alleged income. The court recognizes that the survey year of 2003 comes a year after the 2002 year of trial in this case, and the court does not rely upon the survey for its decision, but nevertheless believes the survey casts some light upon the income issue of this case.
 A series of fundamental principles of law control a determination of the income of the father in this case.
 First, the Supreme Court of Ohio has held:
 (a) that "the overriding concern of the [child support] law is `the best interests of the child' for whom support is to be awarded,"
 (b) that the "terms of R.C. 3113.215 [now R.C. 3119.01 et seq.] are mandatory in nature and must be followed literally and technically in all material respects,"
 (c) that "it is the duty of this court and the other courts of the state to adhere to the dictates of the General Assembly and to strictly comply with the provisions of the statute," and
 (d) that "the trial court's failure to comply with the literal requirements of the statute constitutes reversible error." *Page 5 
 Second, the Franklin County Court of Appeals has held that there is a significant difference between income for purposes of calculating child support and income for purposes of calculating income tax, and that "gross income" for purposes of calculating child support includes "all earned and unearned income from all sources * * * whether or not the income is taxable:"
 "The purposes underlying the Internal Revenue Code and the Child support guidelines are vastly different. The tax code permits or denies deduction from gross income based on myriad economic and social policy concerns which have no bearing on child support. The child support guidelines in contrast are concerned solely with determining how much money is actually available for child support purposes. To this end, R.C. 3113.215(A)(2) [now R.C. 3119.01(C)(7)] includes nontaxable income in `gross income' for purposes of calculating child support. This recognized the economic reality that all money earned by a parent, irrespective of its taxability, is in fact income to that parent." H[e]lfrich v. H[e]lfrich (9/17/96) (Franklin App. No. 95APF12-1599, unrep).
 Third, "self-generated income" means "gross receipts received by a parent from self-employment * * * minus ordinary and necessary expenses incurred by the parent in generating the gross receipts," but only "actual cash items expended by the parent or the parent's business" is included in "ordinary and necessary expenses." ORC 3119.01(C)(13); ORC 3119.01(C)(9); ORC 3119.01(C)(9)(b).
 That is to say, in order for a parent to claim "ordinary and necessary expense" deductions for purposes of child support, he must provide evidence of actual cash expenditures. "It is the parent's duty to provide evidence of actual cash expenditures in order to claim the deductions for child support purposes."
 Fourth, Ohio law (using the term "shall") provides that it is mandatory that the court verify the parent's current and past income with "suitable documents, including * * * receipts and expense vouchers related to self-generated income." ORC 3119.05(A). *Page 6 
 As noted in Offenberg v. Offenberg (1/23/03) (Cuyahoga Cty. C.A. No. 78885, 79425, 79426), under [R.C. 3119.05(A)]:
 "When the court computes the amount of child support required to be paid under a child support order * * * the parents shall verify current and past income and personal earnings with suitable documents, including, but not limited to, pay stubs, employer statements, receipts and expense vouchers related to self-generated income, tax returns, and all supporting documentation schedules for the tax returns."
 The purpose of the statute mandating proof through the production of suitable documents to demonstrate "ordinary and necessary business expenses" is to prevent a self-employed parent from engaging in "creative accounting" (as in Offenberg), especially "where some tax returns are not even signed" * * * or where a parent is "less than forthright about his annual income." * * *
 As noted in Offenberg v. Offenberg, supra:
 "In computing income for purposes of child support, a court should pay particular attention to the possibility that a spouse who is [self-employed] is engaged in `creative accounting designed to cloak net income.'"
 There are a number of factual reasons why the father's testimony and documents regarding his income are not credible, and a number of legal reasons why the father's alleged income tax figures cannot be accepted as a matter of law.
 The father's testimony and documents regarding his income are not credible because of:
 (a) the father engaging in "creative accounting" as demonstrated by the facts (i) that he claims average annual net income over the past three years of $40,300 based upon average annual gross income of $60,700, (ii) that he claims business expenses in excess of 66% of gross income, and (iii) that without explanation he claims his annual gross income decreased from $111,700 (1999) to $63,000 (2001) during the divorce proceedings, and *Page 7 
 (b) the father being "less than forthright about his annual income" as demonstrated by the fact that upon cross-examination substantial discrepancies were shown to exist between his signed responses to interrogatories and his unsigned income tax return (his discovery responses specified $71,300 gross income through the first 11 months of 2001 which results in 2001 total annual gross income of $77,800, while his 2001 income tax return claims $63,000 gross income, almost $15,000 less than he admitted to earning in his discovery responses), and
 [c] the father's failure of proof of income as demonstrated by the fact that several of his tax returns in evidence were unsigned by him.
 The father's alleged income figures cannot be accepted as a matter of law because of:
 (a) the father's failure to verify his income under ORC 3119.05(A) with "suitable documents," especially "receipts and expense vouchers related to self-generated income," and
 [b] the father's failure to verify that his claimed "ordinary and necessary business expenses" on his Schedule Cs are "actual cash items expended by the parent or the parent's business" under ORC 3119.01(C)(9)(a) and/or (b).
 Under these circumstances, the trial court turns to ORC 3119.05(H) which provides that "when the court * * * calculates gross income, the court * * *, when appropriate, may average income over a reasonable period of years."
 As noted * * * in Marquard v. Marquard (8/9/01) (Franklin Cty. C.A. No. 00AP-1345 unrep):
 "Ohio courts have held that it is appropriate to average an obligor's income for the purpose of calculating the obligor's child support obligation where the obligor's income is unpredictable or inconsistent."
 * * *
 * * * Although the father may argue that income averaging under the statute is inappropriate in this case because his *Page 8 
alleged gross income between 1999 and 2001 allegedly decreased rather than fluctuated, such argument is without merit for several reasons. First, the father's alleged net income fluctuated rather than decreased. Second, because of the above specified factual and legal deficiencies regarding the father's income, this trial court finds that his income is "unpredictable or inconsistent" * * *
 Under these factual and legal circumstances, this court averages the father's alleged gross income for the calendar years 1999, 2000, and 2001 for an average gross income of $94,067. The father's failure under ORC 3119.05(A) to support his alleged "ordinary and necessary business expenses" with "suitable documents," particularly "receipts and expense vouchers related to self generated income," and the father's failure under ORC 3119.01(C)(9)(a) and (b) to demonstrate that his alleged deductions constitute "actual cash items extended," preclude deduction of his alleged business deductions.
(Emphasis omitted.) The trial court then determined that, because appellant earns almost twice as much as appellee, appellant "has the ability to pay the portion of the mother's attorney's fees awarded to her by the court."
POST-DECREE ATTORNEY FEES {¶ 6} On October 7, 2003, appellee filed a post-decree motion for attorney fees. At the hearing regarding her motion, appellee testified that she incurred attorney fees: (1) to defend the appeal; (2) to address appellant's attempt to have the judge disqualified; (3) to address appellant's conduct regarding their child's day care facility; and (4) in relation to an incident at the Thornville pool. Appellee stated that she has incurred over $47,000 in attorney fees.
 {¶ 7} On June 7, 2005, the trial court awarded appellee post-decree attorney fees pursuant to R.C. 3105.73. The court found the award to be equitable and that "without such award [appellee] would have been prevented from fully litigating her rights *Page 9 
and the rights of the minor child, and that [appellant] has the ability to pay such award." The court stated that it considered the parties' income: "The record shows that [appellant's annual income is substantially in excess of [appellee]'s annual income. [Appellee]'s annual income of $50,000 is exceeded by [appellant's annual income, whether based upon [appellant's $94,000+ income figure as last determined by this Court in its Findings of Fact and Conclusions of Law Upon Partial Remand, or based upon [appellant's $66,000 income figure as he testified to in the March 21, 2005 hearing. Additionally, the parties submitted documents to the Court showing in excess of $10,000 income received by [appellant] from other attorneys for personal-injury case `referral fees[.]'" The court found the post-decree legal services "were necessary and reasonable in regard to both the appeal and related issues, that the [appellee] would have been prevented from fully litigating her rights and the rights of the minor child without such award, that the [appellant] has the ability to pay such award, and that such award is equitable." This appeal followed.
CASE NO. 05AP-172 {¶ 8} In his first assignment of error, appellant asserts that the trial court failed to follow our remand instructions regarding imputed income. In particular, he complains that the trial court exceeded our remand instructions when it determined not to impute income and then reviewed the evidence in order to assign income to him. Appellant contends that, once the court determined not to impute income, it should have used the income as stated on his income tax returns. We disagree with appellant.
 {¶ 9} Generally, a trial court must follow a reviewing court's mandate. See Nolan v. Nolan (1984), 11 Ohio St.3d 1, 3-4. "Thus, where at a rehearing following remand a *Page 10 
trial court is confronted with substantially the same facts and issues as were involved in the prior appeal, the court is bound to adhere to the appellate court's determination of the applicable law. Moreover, the trial court is without authority to extend or vary the mandate given." Id. (Citations omitted.)
 {¶ 10} In the case at bar, we believe that the trial court followed our mandate and did not extend or vary that mandate. We directed the court to determine whether to impute income to appellant. The court determined not to impute income because, in light of the evidence contained in the record, it opted to determine appellant's income for child support purposes based upon the evidence. In following our remand, the court could not simply stop once it decided not to impute income. The trial court had the obligation to assign a value to appellant's income, either based upon the evidence or through income imputation. We therefore disagree with appellant that the trial court exceeded our mandate.
 {¶ 11} Appellant next complains that the trial court erred by determining his income for child support preparation to be $94,000. He asserts that the court should have looked solely to his income tax returns to determine his income. Again, we disagree with appellant.
 {¶ 12} When a trial court determines a parent's income for purposes of calculating child support, it must verify the income "with suitable documents, including, but not limited to, paystubs, employer statements, receipts and expense vouchers related to self-generated income, tax returns, and all supporting documentation and schedules for the tax returns." R.C. 3119.05. "Although federal and state tax documents provide a proper starting point to calculate a parent's income, they are not *Page 11 
the sole factor for the trial court to consider." Jajola v. Jajola, Cuyahoga App. No. 83141, 2004-Ohio-370, at ¶ 14, citing Foster v.Foster, 150 Ohio App.3d 298, 2002-Ohio-6390; Houts v. Houts (1995),99 Ohio App.3d 701, 706. Indeed, income for child support purposes is not always equivalent to the parent's taxable income. Foster, supra.Helfrich v. Helfrich (Sept. 17, 1996), Franklin App. No. 95APF12-1599. R.C. 3119.01(C)(5) defines "income" for purposes of calculating child support as "either of the following: (a) For a parent who is employed to full capacity, the gross income of the parent; (b) For a parent who is unemployed or underemployed, the sum of the gross income of the parent and any potential income of the parent."
 {¶ 13} R.C. 3119.01 (C)(7) defines "gross income" as "`the total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable, and includes income from salaries, wages, overtime pay, and bonuses to the extent described in division (D) of section 3119.05 of the Revised Code; commissions; royalties; tips; rents; dividends; severance pay; pensions; interest; trust income; annuities; social security benefits, including retirement, disability, and survivor benefits that are not means-tested; workers' compensation benefits; unemployment insurance benefits; * * * and all other sources of income. "Gross income" includes * * * self-generated income; and potential cash flow from any source.'" Foster, at ¶ 14. Thus, in the case at bar, the trial court need not have relied solely upon appellant's tax returns to determine his income for child support purposes. See Corrigan v. Corrigan (May 13, 1999), Cuyahoga App. No. 74088 (concluding that trial court abused its discretion by relying only upon the father's federal income tax return and admissions). *Page 12 
 {¶ 14} Furthermore, we believe that the record supports the trial court's finding that appellant's income for purposes of child support is $94,000. The determination of gross income is a factual finding, which is normally reviewed using the "some competent, credible evidence" standard. Thomas v. Thomas, Lucas App. No. L-03-1267, 2004-Ohio-1034, at ¶ 13; Jajola at ¶ 8. In the case at bar, the trial court fully explained the factual and legal bases for finding appellant's income to be $94,000. The court discussed at length the concept of "self-generated" or "self-employment" income, including proper and reliable documentation for actual cash expenditures. We agree with the court's analysis and adopt it herein.
 {¶ 15} Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error.
 {¶ 16} In his second assignment of error, appellant asserts that the trial court abused its discretion by determining that appellant had the ability to pay appellee's attorney fees. He complains that, in determining that he had the ability to pay, the trial court relied upon a "conjured-up, phantom income."
 {¶ 17} At the time of the trial court's decision, on remand, R.C.3105.18(H)[1] authorized the trial court to award reasonable attorney fees in divorce cases to either party. To award attorney fees under R.C.3105.18(H), a trial court must determine that the attorney fees are reasonable, that the payor has the ability to pay the attorney fees, and that the other party will be prevented from fully litigating his or her rights and adequately protecting his or her interests if attorney fees are not awarded. Gerlach v. *Page 13 Gerlach, Franklin App. No. 03AP-22, 2004-Ohio-1607. This determination "should take into consideration * * * the earning abilities of the parties and the relative assets and liabilities of each." Birath v.Birath (1988), 53 Ohio App.3d 31, 39. In general, it is within the sound discretion of the trial court to award attorney fees in a divorce action. Trott v. Trott, Franklin App. No. 01AP-852, 2002-Ohio-1077, at ¶ 10, citing Rand v. Rand (1985), 18 Ohio St.3d 356, 359; see, also,Birath, supra.
 {¶ 18} In the case at bar, we conclude that the trial court did not abuse its discretion by awarding appellee attorney fees or by determining that appellant has the ability to pay. As we stated under appellant's first assignment of error, the record supports the trial court's decision concerning appellant's income. This figure is not "phony" or "conjured up."
 {¶ 19} Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error and affirm the trial court's judgment in case No. 05AP-172.
CASE NO. 05AP-650 {¶ 20} In his first assignment of error, appellant asserts that the trial court improperly applied R.C. 3105.73. He contends that the trial court's decision to apply this statute, which did not become effective until after the hearing regarding attorney fees, violates the Ohio Constitution's prohibition against retroactive laws. He asserts that it is unconstitutional to apply the statute to a case that already had "been tried and submitted."
 {¶ 21} R.C. 3105.73, which became effective April 27, 2005, provides:
 (A) In an action for divorce, dissolution, legal separation, or annulment of marriage or an appeal of that action, a court may award all or part of reasonable attorney's fees and *Page 14 
litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate.
 (B) In any post-decree motion or proceeding that arises out of an action for divorce, dissolution, legal separation, or annulment of marriage or an appeal of that motion or proceeding, the court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' income, the conduct of the parties, and any other relevant factors the court deems appropriate, but it may not consider the parties' assets.
The Ohio General Assembly specified that R.C. 3105.73 "apply to any action for divorce, legal separation, or annulment of marriage or any post-decree action or proceeding arising from a divorce, legal separation, annulment, or dissolution of marriage if any of the following apply:"
 (A) The action or proceeding is brought, or a notice of appeal in the action or proceeding is filed, on or after the effective date of this act.
 (B) The action or proceeding is brought, or a notice of appeal in the action or proceeding is filed, prior to the effective date of this act, and the action or proceeding is pending in a trial or appellate court on the effective date of this act.
 (C) Any proceeding arising from a motion to modify a prior order or decree in the action or proceeding is pending in a trial or appellate court on the effective date of this act.
2004 H.B. No. 36, Section 3.
 {¶ 22} Several decisions have rejected the argument that applying R.C.3105.73 to cases submitted, but undecided as of the effective date, is an unconstitutional *Page 15 
retroactive application of the statute. See Karales v. Karales, Franklin App. No. 05AP-856, 2006-Ohio-2963; Heyman v. Heyman, Franklin App. No. 05AP-475, 2006-Ohio-1345, at ¶ 7-13; Carter v. Carter, Franklin App. No. 05AP-745, 2006-Ohio-1206, at ¶ 14-15. In Karales, at ¶ 23-24, the court explained:
 Under R.C. 3105.18(H), in order for a trial court to award attorney fees to a party under R.C. 3105.18(H), it had to find: (1) the other party has the ability to pay the fees; (2) the party seeking fees needs them to fully litigate his/her rights and adequately protect his/her interests; and (3) the fees requested are reasonable. Tonti v. Tonti, Franklin App. No. 03AP-494, 2004-Ohio-2529. By contrast, R.C. 3105.73(B)'s requirements for findings by the court are less burdensome. Under R.C. 3105.73(B), in any post-decree motion or proceeding, the court may award reasonable attorney fees and litigation expenses to either party if it merely finds the award equitable. R.C. 3105.73(B). In determining whether an award is equitable, the court may consider the parties' income, the conduct of the parties, and any other relevant factors the court deems appropriate, but it may not consider the parties' assets. Id.
 Here, we disagree with [appellant's] contention that the trial court improperly considered attorney fees under R.C. 3105.73. This court has recently held that R.C. 3105.73 is retroactive in its application and applies to cases pending prior to April 27, 2005, but decided after that date. See Heyman v. Heyman, Franklin App. No. 05AP-475, 2006-Ohio-1345, at ¶ 7-13; Carter v. Carter, Franklin App. No. 05AP-745, 2006-Ohio-1206, at ¶ 14-15. At least one other court has agreed with the outcome in Heyman. See Berthelot v. Berthelot, Summit App. No. 22819, 2006-Ohio-1317, at ¶ 69. In the present case, the magistrate issued her decision on March 7, 2005, while R.C. 3105.18(H) was in effect. R.C. 3105.73 became effective on April 27, 2005. On July 20, 2005, the trial court issued its judgment. Thus, pursuant to Heyman and Carter, the trial court was required to consider any attorney fee award under R.C. 3105.73. *Page 16 
 {¶ 23} In the present case, the trial court had yet to issue a decision when R.C. 3105.73 became effective. Thus, under Karales,Heyman, and Carter, the trial court was required to consider any attorney fee award pursuant to R.C. 3105.73.
 {¶ 24} Accordingly, based upon the foregoing reasons, we hereby overrule appellant's first assignment of error.
 {¶ 25} In his second assignment of error, appellant asserts that the trial court erred by sua sponte permitting an attorney fee award for fees incurred after the date appellee filed her motion. He contends that "[t]he appropriate time frame in which to determine the merits of Beth's motion for attorneys' fees is the date upon which she filed the motion and sought relief; not the date of hearing in the matter which, in this case, occurred nearly 1 ½ years after the motion was even filed." He claims that he did not have notice that appellee sought attorney fees other than those that she incurred for purposes of the 2003 appeal. Appellant asserts: "It is entirely inappropriate to permit the trial court to sua sponte award attorneys' fees right up to the date of hearing when the appropriate notice has not been given." He further claims that an attorney fee award was not justified under the facts that existed as of October 2003.
 {¶ 26} Appellee asserts that the trial court could award attorney fees for the time after she filed her motion. She additionally notes that appellant did not object at the hearing when she testified as to the fees she incurred after she filed the motion.
 {¶ 27} Appellee relies upon Tonti v. Tonti, Franklin App. No. 03AP-494, 2004-Ohio-2529, to support her argument. In Tonti, the court considered the husband's argument that the trial court improperly awarded attorney fees incurred before the time the wife filed her motion to request fees. The court stated: *Page 17 
 Appellant further contends that the trial court improperly awarded attorney fees and expert witness fees incurred prior to the time appellee filed her motion requesting fees. In support of his argument, appellant relies on Seagraves v. Seagraves (1997), 125 Ohio App.3d 98, 707 N.E.2d 1165, wherein it was held that it is improper for a court to award fees incurred prior to the filing of a motion for fees. Id. The court explained:
 "Our holding is based upon the premise that the party against whom relief, in this instance an award of fees, is sought is entitled to timely notice of the intent to seek such relief. Without notice, we conclude that it would be unfair to require a party to pay for fees which may, as is the case here, have been incurred by the other party over a period of years. However, once notice of the intent to seek attorney fees is given, the party against whom the motion is made acts at his own risk if he continues to engage in protracted litigation."
 Id. at 102, 707 N.E.2d 1165.
 The Seagraves court stressed that its decision did not mean that attorney fees were improper. Rather, the court remanded the case to the trial court for a determination of the amount of fees and expenses incurred after the motion was filed.
 We adopt the reasoning employed by the court in Seagraves. Here, the evidence established that appellee began incurring attorney fees as early as February 1998 in conjunction with her motion to modify child support. Appellee filed the motion to modify in March 1998 and did not include a request for attorney fees therein. Appellee continued to incur fees during the entire period prior to the December 6, 1999 filing of her motion for attorney fees. Until that point, appellant had no notice that [appellee] intended to seek attorney fees. As did the Seagraves court, we conclude that it would be unfair to require appellant to pay for fees incurred by appellee prior to the time he was put on notice that fees could be assessed against him. * * *
Id. at ¶ 116-118. *Page 18 
 {¶ 28} In the present case, appellee included a request for attorney fees in her original complaint. Thus, appellant has been on notice of appellee's request since that time and nothing prohibited the trial court from awarding appellee attorney fees for services rendered after her October 7, 2003 motion. See, generally, Tate v. Tate, Richland App. No. 02-CA-86, 2004-Ohio-22 (rejecting argument that trial court erred in awarding attorney fees to appellee, when appellee requested attorney fees only in relation to appellant's motion for custody).
 {¶ 29} Moreover, when appellee testified at the hearing as to the fees she incurred before and after October 7, 2003, appellant lodged no objection. "`A claimed error not objected to will not be noticed on appeal unless it rises to the level of plain error.' State v. Bock
(1984), 16 Ohio App.3d 146, 150, 474 N.E.2d 1228. In appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error seriously affects the basic fairness, integrity, or public reputation of the judicial process itself. Goldfuss v. Davidson (1997),79 Ohio St.3d 116, 679 N.E.2d 1099, syllabus." Freeman v. Freeman, Franklin App. No. 03AP-85, 2003-Ohio-4959, at ¶ 11. The instant case is not one of those extremely rare cases that justifies applying the plain error doctrine.
 {¶ 30} Accordingly, based upon the foregoing reasons, we hereby overrule appellant's second assignment of error.
 {¶ 31} In his third assignment of error, appellant asserts that the trial court abused its discretion by awarding appellee attorney fees. He contends that R.C. 3105.18(H) did not justify an award of attorney fees. *Page 19 
 {¶ 32} Initially, to the extent appellant rests his argument upon the court's failure to comply with R.C. 3105.18(H), as we noted in our discussion of appellant's first assignment of error, R.C. 3105.73
contains the proper standard for awarding attorney fees. Thus, we reject outright any argument that the trial court abused its discretion by failing to comply with R.C. 3105.18(H). Instead, we consider whether the trial court abused its discretion by awarding attorney fees under R.C.3105.73.
 {¶ 33} An award of attorney fees under R.C. 3105.73 lies within a trial court's sound discretion. See Parker v. Parker, Franklin App. No. 05AP-1171, 2006-Ohio-4110. Thus, an appellate court may not reverse a trial court's decision regarding R.C. 3105.73 attorney fees absent an abuse of discretion. Under the abuse of discretion standard of review, an appellate court must affirm the trial court's judgment unless the decision is unreasonable, arbitrary or unconscionable. See, e.g.,Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 218; Masters v.Masters, 69 Ohio St.3d 83, 85, 1994-Ohio-483. Under this highly deferential standard of review, appellate courts may not freely substitute their judgment for that of the trial court. See, e.g., In reJane Doe 1 (1991), 57 Ohio St.3d 135, 137-138.
 {¶ 34} R.C. 3105.73(B) authorizes a trial court to award a party attorney fees in any post-decree proceeding if it is "equitable." "In determining whether an award is equitable, the court may consider the parties' income, the conduct of the parties, and any other relevant factors the court deems appropriate, but it may not consider the parties' assets." Id.
 {¶ 35} In the case sub judice, we conclude that the trial court did not abuse its discretion by awarding appellee attorney fees. The trial court found that appellant's *Page 20 
income is greater than appellee's. The court declined to consider the parties' conduct, but determined that appellee would be prevented from fully litigating her rights without an attorney fee award. Moreover, the court did not award appellee the amount she requested (over $47,000). Instead, the court diligently and thoroughly reviewed the evidence and reduced the award to adjust for what it perceived to be unnecessary duplicate work by two attorneys.
 {¶ 36} Accordingly, we hereby overrule appellant's third assignment of error and affirm the trial court's judgment in case No. 05AP-650.
Judgments affirmed.
ABELE and KLINE, JJ., concur. HARSHA, J., dissents in part.
HARSHA, ABELE, and KLINE, JJ., of the Fourth Appellate District, sitting by assignment in the Tenth Appellate District.
[1] As we discuss, infra, R.C. 3105.73 now governs attorney fee awards in divorce cases. R.C. 3105.18(H) has been deleted from the statute.