[Cite as *In re I.A.G.*, 2012-Ohio-4403.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 98088

---

# IN RE: I.A.G.

# [APPEAL BY MOTHER]

---

### JUDGMENT:
### AFFIRMED IN PART,
### REVERSED IN PART AND REMANDED

---

Civil Appeal from the
Cuyahoga County Common Pleas Court
Juvenile Court Division
Case No. CU-10116900

**BEFORE:** Blackmon, A.J., Boyle, J., and Keough, J.

**RELEASED AND JOURNALIZED:** September 27, 2012

**ATTORNEY FOR APPELLANT**

Chisara Sandra Nwabara
3347 Central Avenue
Cleveland, Ohio 44115


**ATTORNEY FOR APPELLEE**

Mark S. O'Brien
Heights Medical Center Building
2460 Fairmont Blvd.
Suite 301B
Cleveland Heights, Ohio 44106


**GUARDIAN AD LITEM**

Sheila M. Sexton
P.O. Box 1206
Willoughby, Ohio 44096-1206

PATRICIA ANN BLACKMON, A.J.:

**{¶1}** T.M.B. ("mother") appeals the amount of child support that the juvenile court ordered L.L.G. ("father") to pay. She assigns the following four errors for our review:

> **I.  The trial court erred to the prejudice of appellant mother in its determination of the father's income.**
>
> **II.  The trial court erred in denying the mother past due care for the support and maintenance of her minor child prior to the father being ordered to support his child.**
>
> **III.  The trial court abused its discretion when it failed to include a completed child support worksheet in the record; its failure to do so, is prejudicial to the mother.**
>
> **IV.  The trial court's award of child support of $65.25 plus processing fee is unjust and inequitable and was arrived at, erroneously.**

**{¶2}** Having reviewed the record and pertinent law, we affirm in part, reverse in part the trial court's decision, and remand for further proceedings consistent with this opinion. The apposite facts follow.

## Facts

**{¶3}** The father and mother are the parents of I.A.G., who was born on November 22, 2005, in Kansas City, Missouri. The parties, who were engaged at the time the child was born, resided together for about a year and a half after the child's birth until their relationship deteriorated to the point that the mother moved to Cleveland with the child. The parties shortly thereafter terminated their engagement.

**{¶4}** For awhile the parties were able to have an amicable relationship regarding the child. The father would periodically come to Cleveland to visit with the child and the mother would bring the child to Missouri, although not often. This arrangement changed in 2009, when the father remarried. According to the father, the mother refused to allow the father's wife to meet or have any interaction with the child. This made visitation for the father difficult; therefore, he filed a motion for custody. In response, the mother filed a motion for child support.

**{¶5}** The father still lives in Missouri and is a self-employed hair stylist. He does not have any employees; however, other hair stylists pay him rent to have a booth in his salon. He testified that he declared personal bankruptcy in 2007. His tax returns showed his income for 2007 income was $10,450; in 2008, $16,600; and, in 2009, $11,337. He estimated his income for 2010 was approximately $16,000. The father has a son from a previous relationship for whom he pays $400 per month in support without a court order. The father admitted that his current wife, who is a surgical technician, is the "bread winner" of the family and pays most of the household expenses. He owns a two bedroom home in Missouri.

**{¶6}** The mother has two advanced degrees. She has a Masters of Labor Relations and Human Resources, and an MBA. Prior to living in Missouri, she lived in Cleveland and ran a consulting firm out of her home located in Forest Hills. She described her home as one of the historic Rockefeller homes and stated that the home has four bedrooms and four bathrooms.

**{¶7}** While living in Missouri, the mother was the Vice President of Citigroup. After giving birth, she became a consultant for Truman Medical Center located in Kansas City. Upon relocating to Cleveland she became the Human Resources Manager for University Hospitals. After a year, she resigned from her position due to what she described as "ethical issues." She then became a consultant for Whitehead Management, which was a contract job. Thereafter, she became a long term substitute teacher at Shaker Heights Schools teaching business and finance classes. Most recently, she was the Human Resource Manager at Hopkins Airport, but was terminated after several months. She is currently unemployed and receives $453 per week in unemployment. Her tax returns indicated she had a gross adjusted income of $32,000 in 2008 and $160,000 in 2009. She is unsure of how much she made in 2010.

**{¶8}** After the mother moved from Kansas City, the father, without a support order, voluntarily provided support payments for the child that ranged from $100 to $300 per month. Evidence presented at the hearing indicated he had paid the mother a total of $10,130 from the time she left Missouri until May 2010.

**{¶9}** Based on the evidence, the trial court issued an order in which it held the mother would be the residential parent, with the father having liberal visitation. The trial court also concluded for purposes of determining child support that the mother's income was $23,500 and that the father was making minimum wage. The court then ordered the mother's counsel to "prepare a child support worksheet and submit a proposed child support entry" using the incomes the trial court had determined for each party. Because

the mother's counsel failed to provide a worksheet, the father's counsel prepared one and presented it to the trial court. The trial court thereafter ordered the father to pay child support in the amount of $65.25 per month, plus a processing fee, and to also provide health insurance.

## Father's Income

{¶10} We will address the mother's first and fourth assigned errors together because they both concern the mother's contention that the trial court erred by assigning a minimum wage income to the father and not requiring the father to submit other documentation other than his tax records regarding his business.

{¶11} A trial court has discretion related to the calculation of child support, and, absent an abuse of discretion, an appellate court will not disturb a child support order. *Pauly v. Pauly*, 80 Ohio St.3d 386, 390, 1997-Ohio-105, 686 N.E.2d 1108. To constitute an "abuse of discretion," the trial court must exhibit an attitude that is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶12} Although the standard of review for a trial court's child support determination is abuse of discretion, challenges to factual determinations upon which the child support order is based are reviewed using the "some competent credible evidence" standard. *Jajola v. Jajola*, 8th Dist. No. 83141, 2004-Ohio-370. Because a determination of gross income for support purposes is a factual finding, we must review the trial court's decision to determine whether it is supported by competent, credible

evidence. *Fallang v. Fallang*, 109 Ohio App.3d 543, 672 N.E.2d 730 (12th Dist.1996). We conclude the trial court's decision to impute a minimum wage as the father's income is not supported by competent, credible evidence.

{¶13} The father's returns showed that in 2007, his income was $10,450; in 2008, his income was $16,600; and, in 2009, his income was $11,337. He estimated his income for 2010 was approximately $16,000. The trial court used these amounts to determine that at best, the father's earned minimum wage amounted to $14,500. We conclude the trial court's imputing a minimum wage income to the father was an abuse of discretion because the court did not have sufficient documentation of the father's business to conclude what his income was for purposes of computing child support.

{¶14} When a parent's income is self-generated, as the father's income is here, the parent's taxable income may not equal the parent's income as calculated for child support purposes. *Dannaher v. Newboldi,* 10th Dist. No. 05AP-172, 2007-Ohio-2936*; Foster v. Foster*, 150 Ohio App.3d 298, 2002-Ohio-6390, 780 N.E.2d 1041, ¶ 13 (12th Dist.). The purposes underlying the Internal Revenue Code and the child support guidelines are vastly different. *Amlin v. Amlin,* 2d Dist. No. 2008 CA 15, 2009-Ohio-3010, ¶ 70. The federal tax code allows deductions from gross income based on a myriad of economic and social policy reasons that have no bearing on child support. *Id.* In contrast, the child support guidelines focus on determining how much money is actually available for child support purposes. *Id.*

**{¶15}** As we explained in *Glassman v. Offenberg*, 8th Dist. Nos. 85838, 85863, and 87175, 2006-Ohio-3837:

> **When a trial court determines a parent's income for purposes of calculating child support, it must verify the income "with suitable documents, including, but not limited to, paystubs, employer statements, *receipts and expense vouchers related to self-generated income*, tax returns, and all supporting documentation and schedules for the tax returns." R.C. 3119.05. Although federal and state tax documents provide a proper starting point to calculate a parent's income, they are not the sole factor for the trial court to consider. *Foster v. Foster* (2002), 150 Ohio App.3d 298, 2002-Ohio-6390, 780 N.E.2d 1041; *Houts v. Houts* (1995), 99 Ohio App.3d 701, 706, 651 N.E.2d 1031.** (Emphasis added.)

**{¶16}** The father contends *Glassman* only applies when the self-generated income is from a corporation. We do not think this is a distinguishing factor. In the first appeal by *Glassman*, we held:

> **In computing income for purposes of child support, a court should pay particular attention to the possibility that a spouse who is the sole shareholder of a business is engaged in 'creative accounting' designed to cloak net income. Therefore, the court needs to consider all financial data which relates to the operation of that spouse's business. The failure to do so has been found to constitute an abuse of discretion.** *Offenberg, n.k.a. Glassman v. Offenberg*, 8th Dist. Nos. 78885, 78886, 79425, 79426, 2003-Ohio-269.

This danger of "creative accounting" is just as likely with a sole proprietorship, because the owner of the sole proprietorship is just as in control of the finances and paperwork, as a sole shareholder of an S corporation.

{¶17} Father contends his salon is operated as a sole proprietorship, however, in his answer to the mother's interrogatories, he stated in response to interrogatory number nine: "I am self-employed. Sole member and manager, LaRon's Coiffures, LLC, a Missouri limited liability company, d/b/a/ Salon LaRon, from January 2005 to present." So there is a question regarding what business form he is operating the salon as.

{¶18} Regardless of the business form, the father obviously was required to submit documentation in the form of receipts and expenses to his accountant for the preparation of his tax returns. He should have likewise submitted such documentation to the court to verify the tax returns. Without this documentation, it would be impossible to determine if the amounts set forth on the tax documents are valid. "'A trial court is not required to blindly accept all of the expenses an appellant claims to have deducted in his tax returns as ordinary and necessary expenses incurred in generating gross receipts.'" *Huelskamp v. Huelskamp*, 185 Ohio App.3d 611, 2009-Ohio-6864, 925 N.E.2d 167, ¶ 43 (3d Dist.), quoting *Ockunzzi v. Ockunzzi*, 8th Dist. No. 86785, 2006-Ohio-5741, ¶ 53. Evidence was presented that the father wrote a check to pay for GAL expenses from the salon's checking account. Thus, it must be determined what he is exactly listing as his expenses as part of the Schedule C to assure he is not paying for personal debts from the Salon's account, which in turn would reduce his income.

**{¶19}** Additionally, the father contends he does not pay salaries and receives rent from stylists who rent the booths. However, on his tax returns the rental income is not set forth in the tax return, and the returns show he is in fact paying wages that he deducts as expenses. There may be an explanation for these discrepancies, but without additional information, it is not clear if the rental income is included on the tax returns or paying wages. Further, the fact that the father is able to pay $400 per month in child support to his son from another relationship should have alerted the trial court that the father's tax returns may be inaccurate.

**{¶20}** We note the father alleges he had no duty to comply with the mother's request for the business documents because the requests were made after the trial court had already determined the wages of the parties. However, the mother also filed a motion to compel in August 2011, two weeks prior to the trial. The father argues the motion was part of the custody proceedings. However, as of April 26, 2011, the father was aware the custody and support actions were consolidated. The mother's counsel also emailed the father's counsel in July to remind him of the discovery request. Therefore, he was aware that the documents were needed to determine the child support.

**{¶21}** In the instant case, the father's tax returns alone are not sufficient to determine his child support obligation. We conclude the trial court abused its discretion by imputing a minimum wage income to the father without having all of the financial information regarding the father's sole proprietorship. Accordingly, the mother's first and fourth assigned errors are sustained.

## Past Due Care

**{¶22}** In her second assigned error, the mother contends the trial court erred by not requiring the father to pay or award her support for past care.

**{¶23}** R.C. 3111.13(F) states in relevant part:

**(3)(a) A court shall not require a parent to pay an amount for that parent's failure to support a child prior to the date the court issues an order requiring that parent to pay an amount for the current support of that child or to pay all or any part of the reasonable expenses of the mother's pregnancy and confinement, if both of the following apply:**

**(i) At the time of the initial filing of an action to determine the existence of the parent and child relationship with respect to that parent, the child was over three years of age.**

**(ii) Prior to the initial filing of an action to determine the existence of the parent and child relationship with respect to that parent, the alleged father had no knowledge and had no reason to have knowledge of his alleged paternity of the child.**

**{¶24}** We conclude this statute does not apply to the circumstances of this case. The father has been involved with the child since birth. Thus, this is not a case regarding a paternity action. In fact, for the first year and a half of her life, the child lived with the father and mother. Additionally, the father has always paid support for the child, albeit, not all of it was court ordered. He testified he voluntarily paid support for the child and presented evidence that from March 2007, which is the approximate date the mother left Missouri, until May 2010, he paid over $10,000 in child support. Moreover, no action was filed regarding the child until she was almost five years old; therefore, the child was

well over the three year age limit set forth in the statute. Under these circumstances, the trial court did not err by refusing to award the mother support for past care. Accordingly, the mother's second assigned error is overruled.

## Incomplete Child Support Worksheet

{¶25} In her third assigned error, the mother argues that the trial court erred by adopting an incomplete child support worksheet and that the father failed to serve her with a copy of the worksheet. Given our disposition of the first and fourth assigned errors, this error is moot and need not be addressed. App.R. 12(A)(1)(c).

{¶26} Judgment affirmed in part, and reversed in part and remanded for further proceedings consistent with this opinion.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

PATRICIA ANN BLACKMON, ADMINISTRATIVE JUDGE

MARY J. BOYLE,   J., and
KATHLEEN ANN KEOUGH, J., CONCUR