[Cite as *In re I.A.G.*, 2014-Ohio-2767.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 100486**

# IN RE: I.A.G.

# A Minor Child

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. CU10116900

BEFORE: Rocco, J., Jones, P.J., and McCormack, J.

**RELEASED AND JOURNALIZED:** June 26, 2014

**ATTORNEY FOR APPELLANT, L.L.G.**

Mark S. O'Brien
Heights Medical Center Building
2460 Fairmount Blvd.
Suite 301B
Cleveland Heights, OH 44106

**ATTORNEY FOR APPELLEE, T.M.B.**

Chisara Sandra Nwabara
3347 Central Avenue
Cleveland, OH 44115

KENNETH A. ROCCO, J.:

**{¶1}** Appellant L.L.G., biological father of the child I.A.G., appeals from the juvenile court order that fixed child support to be paid to the mother, appellee T.M.B., in the amount of $466.33 per month.

**{¶2}** Appellant presents six assignments of error. The first three claim that the juvenile court considered inadmissible evidence in arriving at the amount. Appellant argues in his fourth and fifth assignments of error that, because the evidence was inadmissible, the amount of child support he was ordered to pay is not supported by sufficient evidence. In his sixth assignment of error, appellant argues that the juvenile court incorrectly completed the child support worksheet by placing his gross income amount on the wrong line.

**{¶3}** Upon a review of the record supplied by appellant, this court cannot find the juvenile court committed any reversible error. Appellant's assignments of error, accordingly, are overruled.

**{¶4}** This court previously reviewed the underlying facts of this case in *In re: I.A.G.*, 8th Dist. Cuyahoga No. 98088, 2012-Ohio-4403 ("*In re: I.A.G. I*"). The relevant portions of that opinion state:

> The father and mother are the parents of I.A.G., who was born on November 22, 2005, in Kansas City, Missouri. The parties, who were engaged at the time the child was born, resided together for about a year and a half after the child's birth until their relationship deteriorated to the point that the mother moved to Cleveland with the child. The parties shortly thereafter terminated their engagement.

For awhile the parties were able to have an amicable relationship regarding the child. The father would periodically come to Cleveland to visit with the child and the mother would bring the child to Missouri, although not often. This arrangement changed in 2009, when the father married. According to the father, the mother refused to allow the father's wife to meet or have any interaction with the child. This made visitation for the father difficult; therefore, he filed a motion for custody. In response, the mother filed a motion for child support.

The father still lives in Missouri and is a self-employed hair stylist. He does not have any employees; however, other hair stylists pay him rent to have a booth in his salon. He testified that he declared personal bankruptcy in 2007. His tax returns showed his income for 2007 income was $10,450; in 2008, $16,600; and, in 2009, $11,337. He estimated his income for 2010 was approximately $16,000. The father has a son from a previous relationship for whom he pays $400 per month in support without a court order. * * *

The mother has two advanced degrees. She has a Masters of Labor Relations and Human Resources, and an MBA. * * *

* * *

[R]ecently, [mother] was the Human Resource Manager at Hopkins Airport, but was terminated after several months. She is currently unemployed and receives $453 per week in unemployment. Her tax returns indicated she had a gross adjusted income of $32,000 in 2008 and $160,000 in 2009. She is unsure of how much she made in 2010.

After the mother moved from Kansas City, the father, without a support order,

voluntarily provided support payments for the child that ranged from $100 to $300 per month. Evidence presented at the hearing indicated he had paid the mother a total of $10,130 from the time she left Missouri until May 2010.

Based on the evidence, the trial court issued an order in which it held the mother would be the residential parent, with the father having liberal visitation. The trial court also concluded for purposes of determining child support that the mother's income was $23,500 and that the father was making minimum wage. The court then ordered the mother's counsel to "prepare a child support worksheet and submit a proposed child support entry" using the incomes the trial court had determined for each party. Because the mother's counsel failed to provide a worksheet, the father's counsel prepared one and presented it to the trial court. The trial court thereafter ordered the father to pay child support in the amount of $65.25 per month, plus a processing fee, and to also provide health insurance.

We will address the mother's first and fourth assigned errors together because they both concern the mother's contention that the trial court erred by assigning a minimum wage income to the father and not requiring the father to submit other documentation other than his tax records regarding his business.

* * * We conclude the trial court's decision to impute a minimum wage as the father's income is not supported by competent, credible evidence.

* * * The trial court used [the father's tax returns] to determine that at best, the father's earned minimum wage amounted to $14,500. We conclude the trial court's imputing  a minimum wage income to the father was an abuse of discretion because the court did not have sufficient documentation of the father's business to conclude what his income was for purposes of computing child support.

When a parent's income is self-generated, as the father's income is here, the parent's taxable income may not equal the parent's income as calculated for child support purposes. *Dannaher v. Newbold*, 10th Dist. No. 05AP-172, 2007-Ohio-2936; *Foster v. Foster*, 150 Ohio App.3d 298, 2002-Ohio-6390, 780 N.E.2d 1041,

113 (12th Dist.). The purposes underlying the Internal Revenue Code and the child support guidelines are vastly different. *Amlin v. Amlin*, 2d Dist. No. 2008 CA 15, 2009-Ohio-3010, ¶ 70. The federal tax code allows deductions from gross income based on a myriad of economic and social policy reasons that have no bearing on child support. *Id.* In contrast, the child support guidelines focus on determining how much money is actually available for child support purposes. *Id.*

* * *

Father contends his salon is operated as a sole proprietorship, however, in his answer to the mother's interrogatories, he stated in response to interrogatory number nine: "I am self-employed. Sole member and manager, LaRon's Coiffures, LLC, a Missouri limited liability company, d/b/a/ Salon LaRon, from January 2005 to present." So there is a question regarding what business form he is operating the salon as.

Regardless of the business form, the father obviously was required to submit documentation in the form of receipts and expenses to his accountant for the preparation of his tax returns. He should have likewise submitted such documentation to the court to verify the tax returns. Without this documentation, it would be impossible to determine if the amounts set forth on the tax documents are valid. "A trial court is not required to blindly accept all of the expenses an appellant claims to have deducted in his tax returns as ordinary and necessary expenses incurred in generating gross receipts." *Huelskamp v. Huelskamp*, 185 Ohio App.3d 611, 2009-Ohio-6864, 925 N.E.2d 167, ¶ 43 (3d Dist), quoting *Ockunzzi v. Ockunzzi*, 8th Dist. No. 86785, 2006-Ohio-5741, ¶ 53. Evidence was presented that the father wrote a check to pay for GAL expenses from the salon's checking account. Thus, it must be determined what he is exactly listing as his expenses as part of the Schedule C to assure he is not paying for personal debts from the Salon's

account, which in turn would reduce his income.

Additionally, the father contends he does not pay salaries and receives rent from stylists who rent the booths. However, on his tax returns the rental income is not set forth in the tax return, and the returns show he is in fact paying wages that he deducts as expenses. There may be an explanation for these discrepancies, but without additional information, it is not clear if the rental income is included on the tax returns or paying wages. Further, the fact that the father is able to pay $400 per month in child support to his son from another relationship should have alerted the trial court that the father's tax returns may be inaccurate.

\* \* \*

In the instant case, the father's tax returns alone are not sufficient to determine his child support obligation. We conclude the trial court abused its discretion by imputing a minimum wage income to the father without having all of the financial information regarding the father's sole proprietorship. Accordingly, the mother's first and fourth assigned errors are sustained.

**{¶5}** Based upon the foregoing disposition, the case was remanded to the juvenile court for further proceedings. The juvenile court permitted the parties to pursue additional discovery in order to allow for the exchange of information.

**{¶6}** The matter proceeded to trial on July 1, 2013. Mother testified that she had been employed temporarily at a position with an annual salary of approximately $40,000, but the position terminated in May 2013. She stated that she would be receiving unemployment compensation in the amount of

$401.00 weekly and that she continued to seek work actively. Mother also stated that she "did the books" for appellant's business when they were living together in Missouri, and his income at that time was "[r]oughly $250,000 a year."

{¶7} Appellant testified on cross-examination by mother's counsel. He admitted that his salon consisted of "four booths total," two of which were rented and one of which was available for rent. He stated he collected from each of his renters "between $125 to $150 per week."

{¶8} Appellant professed to be unable to provide an estimate of his annual income from his business. The record reflects that he supplied copies to the mother of his cancelled checks from his business account for the years 2011 and 2012.

{¶9} Appellant also offered into evidence his "financial statements" for the years 2010, 2011, and the first half of 2012. Appellant testified these statements were prepared for him by his accountant and they reflected "income information" along with the various categories of business expenses that he paid from his business account. Appellant admitted that he paid over $400 a month in child support for his son, and admitted that the Missouri court had calculated the amount of support for his son from his 2004 earnings. Appellant acknowledged he was paying I.A.G.'s mother $204 a month for the child's support.

{¶10} At the conclusion of trial, the record reflects the juvenile court admitted several exhibits into evidence. These included four exhibits submitted by the mother and three exhibits submitted by appellant.

{¶11} Mother's exhibit No. 3 consisted of mother's accountant's financial figures

for appellant's income for the years 2011 and 2012; the figures were based on appellant's 2011 and 2012 cancelled checks and bank statements. Mother's exhibits Nos. 5, 6, and 9 consisted of copies of appellant's 2011 and 2012 cancelled checks and bank statements. As previously mentioned, appellant's exhibits B, C, and D showed appellant's business income and expenses for the years 2010, 2011 and the first half of 2012.

{¶12} The juvenile court's judgment entry discussed the evidence presented at trial and concluded that several "adjustments" to appellant's business expenses were in order. These included deductions for items that did not qualify as legitimate business expenses, such as auto fuel and meals and entertainment. Adding in the "booth" rental, the court set appellant's annual "net income" at $37,125.[1] The court then reviewed all of appellant's cancelled checks that were in evidence and added an additional income of $7,859, "giving [appellant] a total [annual] net income for child support calculation purposes of $44,984."[2] Based upon mother's testimony that she currently received only unemployment benefits, the court found mother's annual income to be $20,851 for child support purposes.

{¶13} The juvenile court placed these calculations on the attached worksheets. Appellant's child support obligation as of September 3, 2013, came to $466.33 per month.

---

[1] This figure is mathematically incorrect. The calculation amounts to $35,725. Appellant does not present this as an issue on appeal.

[2] However, in entering the amount of appellant's income, the juvenile court transposed the numbers, therefore, the worksheet contains the figure "$44,948."

**{¶14}** Appellant filed a timely appeal from the juvenile court's judgment entry. He presents the following six assignments of error for review.

I.   The trial court committed reversible error by admitting into evidence Appellee's expert report, or portions thereof, as Appellee's expert report constituted inadmissible hearsay under Evid.R. 802.

II.   The trial court committed reversible error by admitting into evidence Appellee's expert report, or portions thereof, as Appellee's expert report was not authenticated under Evid.R. 901.

III.   The trial court committed reversible error by admitting into evidence Appellee's expert report, or portions thereof, as Appellee's expert was not qualified as an expert, nor was a proper foundation laid for the expert testimony contained within the report, under Evid.R. 702.

IV.   The trial court committed reversible error by determining Appellee's income for child support purposes to be $401 per week or $20,851 per year, as such determination was not supported by sufficient documentation.

V.   The trial court committed reversible error by determining Appellant's income for child support purposes to be $44,984 per year, as the method by which the trial court arrived at this number included judgments with respect to income and expenses that were not supported by the record on appeal.

VI.   The trial court committed reversible error by including his [sic] gross income on line 1a of its child support computation worksheet, rather than on line 2.

**{¶15}** Appellant's first, second, third, and fifth assignments of error will be addressed together, because all raise challenges to the documentary evidence that the juvenile court used to compute

Neither party objected to this error, which benefitted appellant.

appellant's child support obligation.

**{¶16}** Appellant asserts that the juvenile court erred for various reasons in admitting into evidence "appellee's expert report"; appellant refers to mother's exhibit No. 3. Appellant further asserts that the court improperly relied upon this evidence. This court disagrees.

**{¶17}** A trial court has broad discretion in the admission or exclusion of evidence, and so long as such discretion is exercised in line with the rules of procedure and evidence, its judgment will not be reversed absent a clear showing of an abuse of discretion. *Rigby v. Lake Cty.*, 58 Ohio St.3d 269, 569 N.E.2d 1056 (1991). In making his assertions, appellant supposes that the juvenile court considered inadmissible evidence. Appellate courts, however, presume that a trial court considered only relevant and admissible evidence in a bench trial. *State v. Crawford*, 8th Dist. Cuyahoga No. 98605, 2013-Ohio-1659, ¶ 61; *State v. Chandler*, 8th Dist. Cuyahoga No. 81817, 2003-Ohio-6037, ¶ 17.

**{¶18}** Appellant first complains that the juvenile court relied upon hearsay when it considered portions of mother's exhibit No. 3. Appellant argues that mother's exhibit No. 3, which was based upon items he provided to mother during discovery, violated Evid.R. 802 because those items did not qualify as "business records" and violated Evid.R. 901 because they were not authenticated. He further argues that the exhibit violated Evid.R. 702 because the mother's accountant did not testify at trial.

**{¶19}** Evid.R. 803(6) provides in pertinent part that the following is not excluded

by the hearsay rule:

[a] * * * record, or data compilation, in any form, of acts * * * made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of [a] qualified witness * * * , unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

{¶20} In this case, the juvenile court made it very clear as to mother's exhibit No. 3 that the court would consider only "the financial figures" that appellant's checks and bank statements reflected. The court specifically stated several times that it would not use mother's accountant's report. This court will not presume otherwise; therefore, Evid.R. 702 was not implicated.

{¶21} Appellant admitted that he provided the cancelled checks and bank statements that were attached to mother's exhibit No. 3. Appellant also identified the checks and statements as his, thus providing a foundation for the admissibility of the items contained in mother's exhibit No. 3. In effect, therefore, he is asserting that he, "the source of the information," was untrustworthy. He is better served by the presumption that the juvenile court considered only admissible and relevant evidence. *Blankenship v. Vance*, 5th Dist. Knox No. Case No. 2010-CA-000009, 2010-Ohio-4209, ¶ 17-19.

{¶22} A trial court's decision regarding a child support obligation will not be reversed on appeal absent an abuse of discretion. *Pauly v. Pauly*, 80 Ohio St.3d 386, 390, 686 N.E.2d 1108 (1997), citing *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989). An abuse of discretion is more than an error of law, it connotes that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5

Ohio St.3d 217, 450 N.E.2d 1140 (1983). Moreover, as long as the decision of the trial court is supported by some competent, credible evidence, the reviewing court will not disturb it. *Masitto v. Masitto*, 22 Ohio St.3d 63, 488 N.E.2d 857 (1986).

{¶23} In this case, the record supports a conclusion that the juvenile court based its decision on the exhibits that were properly introduced into evidence, the testimony of appellant, and the testimony of the child's mother. *Hothem v. Hothem*, 5th Dist. Coshocton No. 09 CA 20, 2010-Ohio 2400, ¶ 9. In light of appellant's reluctance to provide detailed information about the income his business generated, the juvenile court arrived at its calculation of appellant's annual obligation as of September 3, 2013, by determining the credibility of the witnesses and then by arriving at an average based on the admissible evidence submitted by the parties. No abuse of discretion occurred under these circumstances presented in this case. Appellant's first, second, third, and fifth assignments of error are overruled.

{¶24} In his fourth assignment of error, appellant complains that mother's testimony about her imminent unemployment compensation was not adequate proof of her income. This complaint also fails.

{¶25} In *In re: I.A.G. I*, mother appealed on the basis that the juvenile court "erred by assigning a minimum wage income to the father and not requiring the father to submit other documentation other than his tax records regarding his business." *Id.* at ¶ 10. Appellant filed no cross-appeal to challenge the juvenile court's determination of mother's income; at that time, she was "unemployed and receive[d] $453 per week in

unemployment compensation."  *Id.* at ¶ 7.

**{¶26}** Finding merit to mother's appeal, this court remanded the case for the court to require appellant to submit "all of the financial information regarding [appellant's] sole proprietorship" in order "to determine *his* child support obligation."  *Id.* at ¶ 21 (emphasis added.)   That was the scope of the remand.   "If an appellate court remands a case for a limited purpose, the trial court must accept all issues previously adjudicated as finally settled."  *Gomez v. Gomez*, 7th Dist. Noble No. 10-NO-375, citing *Cugini & Capoccia Builders, Inc. v. Ciminello's, Inc.*, 10th Dist. Franklin No. 06AP-210, 2006-Ohio-5787, ¶ 32.

**{¶27}** The juvenile court understood its obligation.   According to mother's testimony, although she had obtained a temporary position prior to the time of the trial, that position had terminated in May 2013.   Mother testified that "in a week or two," she would "soon start to receive unemployment payments, as [she] did before, at $401 a week this time it will be."

**{¶28}** Therefore, mother's income had remained relatively the same as what it was at the time she sought review in *In re: I.A.G. I.*   In light of the fact that the juvenile court's mandate was to reassess appellant's income for purposes of child support rather than mother's, this court cannot find an abuse of discretion occurred.   *See Gomez* at ¶ 22.

**{¶29}** Appellant's fourth assignment of error, accordingly, is overruled.

**{¶30}** In his sixth assignment of error, appellant apparently argues that the juvenile

court's worksheet contains an error that will give him "an additional tax burden." However, this court declines to consider his argument because his appellate brief as to this assignment of error is incomplete; it appears that a page of argument is missing. App.R. 12(A)(2).

{¶31} The juvenile court's order is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KENNETH A. ROCCO, JUDGE

LARRY A. JONES, SR., P.J., and
TIM McCORMACK, J., CONCUR